1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  KOSSOFF PLLC,                          Lead Case No.

7        Debtor.                         21-10699-dsj

8  - - - - - - - - - - - - - - - - - - - -x

9  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

10  CHAPTER 7 INTERIM TRUSTEE,

11        Plaintiff,                      Adv. Proc. No.

12  v.                                    22-01158-dsj

13  ROC-LE TRIOMPHE ASSOCIATES, LLC, ET AL.,

14        Defendants.

15  - - - - - - - - - - - - - - - - - - - -x

16  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

17  CHAPTER 7 INTERIM TRUSTEE,

18        Plaintiff,                      Adv. Proc. No.

19  v.                                    22-01141-dsj

20  PEREVOSKI, ET AL.,

21        Defendants.

22  - - - - - - - - - - - - - - - - - - - -x

23

24

25

2

1

2   - - - - - - - - - - - - - - - - - - - -x

3   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4   CHAPTER 7 INTERIM TRUSTEE,

5           Plaintiff,                    Adv. Proc. No.

6   v.                                    22-01146-dsj

7   KOSSOFF,

8           Defendant.

9   - - - - - - - - - - - - - - - - - - - -x

10  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

11  CHAPTER 7 INTERIM TRUSTEE,

12          Plaintiff,                    Adv. Proc. No.

13  v.                                    23-01078-dsj

14  GATSBY, ET AL.,

15          Defendants.

16  - - - - - - - - - - - - - - - - - - - -x

17  ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

18  CHAPTER 7 INTERIM TRUSTEE,

19          Plaintiff,                    Adv. Proc. No.

20  v.                                    23-01085-dsj

21  SAVOYSKY-SMITH,

22          Defendant.

23  - - - - - - - - - - - - - - - - - - - -x

24

25

3

1

2    - - - - - - - - - - - - - - - - - - - -x

3   ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS

4   CHAPTER 7 INTERIM TRUSTEE,

5            Plaintiff,                    Adv. Proc. No.

6   v.                                    22-01113-dsj

7   VNB NEW YORK LLC, ET AL.

8            Defendants.

9   - - - - - - - - - - - - - - - - - - - -x

10

11

12

13

14

15

16

17                United States Bankruptcy Court

18                One Bowling Green

19                New York, New York

20

21                October 25, 2023

22                10:00 AM

23   B E F O R E:

24   HON.  DAVID S. JONES

25   U.S. BANKRUPTCY JUDGE

4

1

2    Adversary proceeding: 22-01141-dsj Albert Togut, Not

3    Individually but Solely in His Capacity as Chapter 7 Interim

4    trustee v. Perevoski, et al.

5    1) Case Management Conference

6

7    Adversary proceeding: 22-01146-dsj Albert Togut, Not

8    Individually but Solely in His Capacity as Chapter 7 Interim

9    trustee v. Kossoff

10   1) Conference RE: Motion Filed by Mitchell Kossoff to Dismiss

11   this Case for Failure to State a Cause of Action and for

12   Permissive Intervention

13

14   Adversary proceeding: 22-01146-dsj Albert Togut, Not

15   Individually but Solely in His Capacity as Chapter 7 Interim

16   trustee v. Kossoff

17   1) Pre-Trial Conference

18

19   Adversary proceeding: 22-01113-dsj Albert Togut, Not

20   Individually but Solely in His Capacity as Chapter 7 Interim

21   trustee v. VNB New York LLC, et al.

22   1) Case Conference Re: the Issues Raised in Letter from

23   Mitchell Kossoff Regarding Amended Scheduling Orders.

24

25

5

1

2   Adversary proceeding: 23-01058-dsj Albert Togut, Not

3   Individually but Solely in His Capacity as Chapter 7 Interim

4   trustee v. Roc Le Triomphe Associates, LLC, et al.

5   1) Case Conference Re: the Issues Raised in Letter from

6   Mitchell Kossoff Regarding Amended Scheduling Orders.

7

8   Adversary proceeding: 23-01078-dsj Albert Togut, Not

9   Individually but Solely in His Capacity as Chapter 7 Interim

10   trustee v. Gatsby, et al.

11   1) Pre-Trial Conference

12

13   Adversary proceeding: 23-01085-dsj Albert Togut, Not

14   Individually but Solely in His Capacity as Chapter 7 Interim

15   trustee v. Savoysky-Smith

16   1) Pre-Trial Conference

17

18

19

20   Transcribed by:   Sharona Shapiro

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (302)263-0885

25   operations@escribers.net

6

1

2   A P P E A R A N C E S (All present by video or telephone):

3   TOGUT, SEGAL & SEGAL LLP

4        Attorneys for Chapter 7 trustee

5        One Penn Plaza

6        Suite 3335

7        New York, NY 10119

8

9   BY:   NEIL BERGER, ESQ.

10        JARED C. BORRIELLO, ESQ.

11        JOHN GALLEGO, ESQ.

12        JONATHAN COHEN, ESQ.

13        RONALD HOWARD, ESQ.

14        MINTA NESTER, ESQ.

15        JONATHAN SAMPER, ESQ.

16

17

18   MITCHELL H. KOSSOFF, Pro se

19

20

21

22

23

24

25

7

DAVID BOLTON, P.C.

    Attorneys for Estate of Phyllis Kossoff

    666 Old Country Road

    Suite 509

    Garden City, NY 11530


BY:   DAVID BOLTON, ESQ.



VARNUM LLP

    Attorneys for Eprodigy Financial LLC;

    Capital Stack LLC and ACH

    480 Pierce Street

    Suite 300

    Birmingham, MI 48009


BY:   WILLIAM LEE THOMPSON, ESQ.

**KOSSOFF PLLC**

8

1               P R O C E E D I N G S

2          THE COURT:  Good morning, everyone.  It's Judge Jones

3     here for a 10 a.m. calendar in various adversaries arising from

4     the Kossoff PLLC bankruptcy.  The main case docket number is

5     21-10699, and we're proceeding with reference both to a

6     calendar that the Court prepared, but also an agenda submitted

7     by the trustee.

8          I know all the participants, so I won't take formal

9     appearances.  We'll just, I think, call the cases in order.

10    Let me just say a little bit about what's on my mind that we

11    need to accomplish, and then I'll invite the trustee to say

12    anything they want, by way of overview, before we get going, if

13    you'd like.

14         So what's on my mind is that in adversary -- the

15    Perevoski adversary, number 22-01141, I granted, in part, a

16    motion to intervene by Mr. Kossoff, and we're going to need to

17    set a briefing schedule in that case.

18         Mr. Kossoff has proposed similarly intervening and

19    seeking dismissal of another adversary.  We'll talk about that

20    when that adversary comes up.  But I'm interested in good case

21    management ideas people have, and I may have some too, to avoid

22    having to file a 1,000 briefs on the same issue if possible.

23    But I'll just see where we get on that.  Of course, that's

24    subject to hearing from everybody else.

25         And Mr. Kossoff raised some case management schedule

**KOSSOFF PLLC**

9

1   or discovery schedule issues, and a desire to file a summary

2   judgment motion, and some questions about timing in adversary

3   proceedings 22-01113 and 22-01158.  So we need to cover that.

4        We have a variety of simple case management update

5   type things and tending that we need to do.

6        And finally, I am overdue in getting to the parties in

7   the adversary against Roc Le Triomphe Associates and Hampton

8   Management Co.  I have spent some time reading the briefs, and

9   I do think I should schedule oral arguments.  So that's been

10  fully briefed for a couple of months now, I think, and you were

11  waiting to hear from me what I wanted to do.

12       I do think I want to hear oral argument, because it

13  seems substantial enough.  And we can talk about when that

14  should occur, one option being just folding it into the next

15  existing Kossoff day, which I think is November 29.  Another

16  possibility, if you want to do it a little sooner, would be to

17  find you a unspoken-for-time, sort of, maybe mid-November, or

18  something like that, if you want to have a little quicker

19  movement on that and/or an undistracted day.  Okay?

20       So that's the totality of what's on my mind to do

21  today.  Let me ask whoever is going to lead us off for the

22  trustee to tell me if my overview matches your overview.  And

23  then also let me know if there's any general updates that I

24  should be aware of before we turn to the adversary specific

25  calendar.

**KOSSOFF PLLC**

10

1        MR. BERGER:  Good morning, Judge.  It's Neil Berger,

2    Togut, Segal, for the trustee.  I'm here with my colleagues,

3    Mr. Borriello, Ms. Nester, and Mr. Howard.

4        I think Your Honor has it right.  I will first

5    address, generally, the IRS proof of claim issue, which I think

6    is an overarching issue concerning the motion to intervene your

7    ruling.  Mr. Kossoff's proposed intervention in other adversary

8    proceedings may also affect portions of the Roc Le Triomphe

9    adversary proceeding.

10       My colleagues will address the specific adversary

11   proceedings on today's calendar and Your Honor's proposal for

12   oral argument in Roc Le Triomphe, although I think probably

13   waiting until the 29th makes sense.

14       If I may, on the IRS proof of claim -- and Your Honor,

15   I'm providing -- the update I'm about to provide is just that;

16   it's an update.  I'm not asking Your Honor for a ruling.  I'm

17   not prejudicing anyone's rights, claims, or defenses.

18       But by way of update, Your Honor, Mr. Kossoff brought

19   into question the validity of the Internal Revenue Service's

20   proof of claim as a means to potentially eliminate causes of

21   action asserted by the trustee in a number of adversary

22   proceedings in which the trustee's complaint uses the IRS look

23   back period to try to achieve a clawback of certain transfers.

24       THE COURT:  Right.  And the specific year was 2015,

25   right, tax year 2015?

**KOSSOFF PLLC**

11

1          MR. BERGER:  Yes.  Yes.  There's a liability for it

2    for 2015.  And as a matter of course, in every case, trustees

3    look at proofs of claim.  Particularly here, because Mr.

4    Kossoff drew it into an issue, we took another look at it,

5    meaning we first took a look at it when we were formulating the

6    trustee's causes of actions.  We were then satisfied that it

7    was a valid proof of claim using, among other things, the

8    debtor's books and records that we were able to obtain from a

9    number of different sources.  We used it in those complaints.

10   Mr. Kossoff brought it into question.  We took another look at

11   it, again satisfied with it.  We've said that in our pleadings.

12   We've said that on the record.  Certainly under the Code, it's

13   deemed valid unless and until it's disallowed.

14          And we took another step, Your Honor.  We've been

15   engaged with the Internal Revenue Service, asking them, and

16   having communications with them concerning that claim.  And we

17   are still convinced that it is a valid claim.  We spoke with

18   them as recently as this morning.

19          And what I'm proposing -- the trustee and we are

20   proposing, Your Honor, is that we bring on an appropriate

21   motion, which will have a stipulation with the Internal Revenue

22   Service, for allowance of an Internal Revenue Service amended

23   proof of claim.  We propose that we file it in the main case.

24   It is a claim against the estate.  We file it also in each

25   adversary proceeding in which the trustee's complaint uses the

**KOSSOFF PLLC**

12

1   Internal Revenue claim as a basis for the extended reach-back

2   period.

3           And that way, Your Honor, everyone in the case, and in

4   each of the adversary proceedings, will be on notice of what's

5   happening with this claim.  They can object.  They can

6   participate how they wish.  The Internal Revenue Service has

7   not yet been in front of Your Honor to defend its claim.  This

8   will be a vehicle to have the U.S. Attorney's office in front

9   of Your Honor.  And it will also --

10          THE COURT:  Can I -- Mr. Berger, I'm sorry.  This is

11  completely my fault.  You're speaking beautifully, clearly.

12  And I got a text from chambers raising a question at a critical

13  moment.  So what is the motion or the filing you'd be making in

14  the main case, and also docketing in the adversaries, exactly?

15          MR. BERGER:  It would be a 9019 motion, Your Honor.

16  It would be a motion to allow the Internal Revenue Service

17  claim, an amended proof of claim.

18          THE COURT:  Okay.  So is the IRS --

19          MR. BERGER:  And --

20          THE COURT:  But IRS hasn't yet amended, has it?

21          MR. BERGER:  It has not.  And this morning we asked

22  them to please -- we asked them to put us in touch with someone

23  from the U.S. Attorney's office so we can negotiate an

24  appropriate stipulation.  But it would be a motion to allow an

25  amended proof of claim by the Internal Revenue Service.  And

**KOSSOFF PLLC**

13

1    that claim --

2            THE COURT:  Okay.

3            MR. BERGER:  And so, Your Honor, we hope that the

4    Court would agree that it's an appropriate vehicle, as a

5    procedural mechanism, so that everyone in the case, everyone in

6    the affected adversary proceedings will be on notice.  There

7    will be a procedural mechanism for parties to participate if

8    they'd like to.

9            THE COURT:  Um-hum.

10           MR. BERGER:  The IRS will be in front of Your Honor to

11   defend its claim.  They haven't had that opportunity yet.  And

12   there will be a factual record, so that Your Honor can rule on

13   the allowance, or not, but the allowance of the proof of claim.

14           And we think, Your Honor, that we've been addressing

15   the proof of claim as best we can, but this is the mechanism to

16   get it in front of Your Honor and give parties an opportunity

17   to be heard regarding that claim.

18           THE COURT:  So I have a variety of questions.  I think

19   the one I'll start with is, what impact do you see this having

20   on the timing of the adversaries in which the IRS claim is at

21   issue?

22           MR. BERGER:  A positive impact, generally, I would

23   say, Your Honor.  Your Honor, I think, observed in your ruling,

24   and I will tell you firsthand, that there are a number of

25   parties with whom we started settlement negotiations, who are

**KOSSOFF PLLC**

14

1   now sitting on the sideline waiting for this issue to be

2   resolved.  We think it will be value-enhancing to the estate.

3          And Your Honor, as to the intervention issues, I'll

4   speak to them generally, the one that Your Honor has granted

5   for the limited purpose, and also as to the proposed

6   interventions.  We think as to the proposed intervention, we'd

7   respectfully request that Your Honor hold in abeyance for some

8   time, short time, briefing, rulings.  There is certainly an

9   expenditure of resources --

10          THE COURT:  Right.

11          MR. BERGER:  -- that we think can be eliminated.  And

12   so --

13          THE COURT:  So I'm open to that as long as it doesn't

14   interfere with Mr. Kossoff's rights or cause events to sort of

15   race along before he gets a chance to be considered, which I'm

16   sure you don't intend to be the case.  So let me hear a little

17   more besides that it's a positive effect.  How do I dovetail

18   these things?

19          MR. BERGER:  Your Honor, we do not intend to

20   improperly -- or impair Mr. Kossoff or anyone's rights.  It

21   would be a twenty-one day motion.  If parties want to contact

22   the Court to seek relief regarding that motion, discovery,

23   additional time to be heard, we'll deal with them with Your

24   Honor as they arise.

25          I'm not sure how, otherwise, they would harm the

**KOSSOFF PLLC**

15

1    process.  I know that, for instance, Your Honor, hopefully next

2    week we'll be filing our next omni 9019 motion.  There are

3    defendants in these advisory proceedings who are satisfied that

4    the claim is out there --

5              THE COURT:  Right.

6              MR. BERGER:  -- and they want to move forward with

7    their settlements.

8              THE COURT:  So can I just distill this?  You're

9    talking about filing a twenty-one day notice Rule 9019

10   settlement motion, I guess, which I think depends on the IRS

11   filing an amended claim, either before the motion is filed, or

12   before it's heard, anyway.

13             MR. BERGER:  No.

14             THE COURT:  No?

15             MR. BERGER:  I'm sorry, no.  The IRS asked.  And to

16   save administrative confusion, we asked them not to file the

17   amended claim.  It will be annexed as an exhibit to the motion.

18             THE COURT:  Okay.

19             MR. BERGER:  We don't want them filing an amended

20   claim and then a subsequent amended claim.  And we envision our

21   motion being filed with a stipulation, the proposed amended

22   claim, a supporting declaration from the trustee's

23   professionals, an IRS transcript, and whatever other evidence

24   we can gather together, so that there is entire transparency to

25   the process.

**KOSSOFF PLLC**

16

1        THE COURT:  Okay.  And let me ask this.  A 9019 motion

2   necessarily concerns a compromise of an amount asserted as due

3   to or from the estate.  Does that do all the work you're hoping

4   it will do in terms of resolving the legitimacy of the IRS

5   claim or the status of it?  I guess your position will be, if

6   it's allowed in an amount set through a 9019 motion, that

7   counts as a bona fide obligation of the estate, if there's some

8   amount?

9        MR. BERGER:  Yes.  Yes, Your Honor.  And there are two

10  pieces of my response.  One is, yes, we're hopeful that there

11  will be a ruling that this is an allowed claim against the

12  estate, and the amended claim will be filed.

13        And second, I'm using 9019 today because there is a de

14  minimis variance in the amounts sought by the IRS and the

15  trustee's calculations.  Between now and when we file the

16  motion, we may be able to reconcile that de minimis variation.

17        THE COURT:  Okay.

18        MR. BERGER:  And it may simply be a motion to allow

19  the claim.  But I'm using 9019 because, as recently as an hour

20  ago, there was a very small variance.

21        THE COURT:  Okay.  And if a person who's interested

22  and has reason, strategically, to want to establish the flat-

23  out invalidity of the IRS claim, wants to take, sort of,

24  unfettered discovery into all aspects of validity, in your

25  view, is that going to be available through the 9019 process?

**KOSSOFF PLLC**

17

1        MR. BERGER:  It is, Your Honor.  We want a ruling that

2   puts this to rest.

3        THE COURT:  Okay.  All right.  I think -- so let me

4   first --

5        MR. KOSSOFF:  May I respond, Your Honor?

6        THE COURT:  Yeah, I'm going to come to you in one

7   second, Mr. Kossoff.  Let me just first give a quick reaction

8   on my own.

9        First, let me say I appreciate the thought that

10  obviously went into this.  I think all of these cases are going

11  to be well served by somehow getting a clean and clear

12  treatment of the IRS claim.  And so this is certainly a very

13  good idea.  And then we'll hear, I suspect -- well, maybe there

14  will be universal enthusiasm about it, but if not, we'll smoke

15  that out right now.

16       Okay.  So Mr. Kossoff, yes, you can certainly go right

17  ahead.

18       MR. KOSSOFF:  Okay.  I just want to start by saying,

19  Your Honor, I'm am not in a -- I don't have the ability to make

20  as many arguments as I want to in this proceeding, at this

21  particular point in time, chiefly because, A, I've never

22  received a copy of your decision; B, I've never even got a

23  notice of this meeting -- of this hearing from anyone.  And

24  normally, the trustee at least has the courtesy of sending me a

25  JPEG email saying that this hearing is on.  I've gotten no such

**KOSSOFF PLLC**

18

1    communication from the trustee at all.

2           I was only basically drawn into this phone call by

3    sheer luck, that I was walking by a guard who said that the

4    Court was looking for me, because I've gotten no notice.  So

5    for me, at this point in time, to try to make substantive

6    arguments with respect to this proposal, in a decision that I

7    have not even been able to read, yet alone digest, is really

8    unfair.  And I would just say --

9           THE COURT:  Well, yeah, let me --

10          MR. KOSSOFF:  -- I was just --

11          THE COURT:  Let me jump -- sorry.  Mr. Kossoff, let me

12   jump in before you move on, on a couple of procedural points

13   you've just raised.  One is I will make inquiry about the Court

14   communication.  I think ordinarily all of our orders and

15   matters affecting you, and I think the decision, I believe, are

16   filed in a way that causes them to be mailed out to you.  So

17   I'm not sure what happened, but I'll double check whether there

18   was any error on that front.

19          Second, the Court did enter an order directing the

20   prison to produce you for today's hearing, which is what we

21   routinely do, logistically, to ensure that they get you on the

22   phone.  Yeah, and my deputy just messaged --

23          MR. KOSSOFF:  Usually when they're mailed to me,

24   usually they come, usually, a day after the hearing.  If you --

25          THE COURT:  Okay.  Well, look -- yeah, hang on, hang

**KOSSOFF PLLC**

19

1  on, Mr. Kossoff.  I just wanted to explain, and my deputy just

2  confirmed, yes, copies of what we enter are mailed to you.  I

3  think it would be good to -- and the deputy tells me that this

4  was explained before the hearing as well, but I'll put it on

5  the record.

6  Also, what Mr. Berger has just spelled out is new to

7  me, just as it is to you today.  I think he has prepared a

8  proposed course of action, which is appropriate and helpful.  I

9  mean, it certainly -- that is, it's appropriate and helpful for

10  him to think about a course forward, in light of my ruling.

11  Finally, I will just tell you, if you hadn't seen it,

12  what my ruling was, was granting, in part, your motion to

13  intervene, stating -- but insofar as it was going to allow you

14  to file a dispositive -- what you believe will be a dispositive

15  motion concerning the status of the IRS claim, or the validity

16  of the IRS claim, on which certain of the lookback periods are

17  premised.  That's in the Perevoski case, which is number

18  22-01141.

19  So the question is next steps.  I had thought we'd be

20  setting a briefing schedule.  That's what I said in my

21  introductory remarks.  And the trustee is proposing -- because

22  the issue recurs in a lot of adversaries, the trustee is

23  proposing that a cleaner method of dealing with the IRS

24  situation is for them to file a motion, because they continue

25  to believe the IRS claim has validity, that would be a proposed

**KOSSOFF PLLC**

20

1  settlement with the IRS that any party, including you, could

2  comment on challenge, et cetera.

3       They've just told me there will be an opportunity to

4  challenge the validity of the lien --  excuse me -- the claim

5  entirely, and they propose holding off on the various

6  intervention or case-specific briefing schedules until we get

7  clarity on that on an omnibus way.

8       Mr. Kossoff, hang on one second, because I'm going to

9  ask Mr. Berger, did I fairly characterize what you're

10  proposing?

11       MR. BERGER:  Yes, Judge.

12       THE COURT:  Okay.  Great.  So I wanted to make sure.

13       So yeah, Mr. Kossoff, how about that?  We have one --

14       MR. KOSSOFF:  I disagree --

15       THE COURT:  -- combined clean shot --

16       MR. KOSSOFF:  -- with that whole -- I disagree with

17  that wholeheartedly for a number of different reasons.

18       THE COURT:  Okay.  Why?

19       MR. KOSSOFF:  And one of the main ones is, is that

20  whether or not the IRS has a valid claim, what periods it is,

21  whatever it's going to finally say -- and they're changing

22  their story, I would say, impermissibly, based upon doctrines

23  of litigatory estoppel, since they've already indicated in the

24  complaint what the claim is.  And I've put that at issue, which

25  must be decided.

**KOSSOFF PLLC**

21

1        But aside from that fact, whether the IRS has a claim

2   or it doesn't is not the same thing as whether or not they --

3   regardless of what that claim is, the trustee can use that

4   claim as the basis of a 544(b) predicate creditor.

5        And let me be more specific.  When the IRS files a

6   notice of tax lien prior to a bankruptcy, they are no longer an

7   unsecured creditor.  They're a secured creditor, which does not

8   allow them basically -- for the trustee to then step in their

9   shoes.

10        Even if the IRS has an assessment that is not paid

11   within a certain period of time, they are a de facto lien

12   creditor, and again, they are not an unsecured creditor as that

13   is defined in bankruptcy law.  So the tests are not the same.

14        Moreover, the allegations that Mr. Berger and the

15   trustee have made in their complaint are fairly specific.  They

16   indicated in their complaint that the basis of the IRS claim is

17   an assessment dated 3/28/16.  I have indicated and given the

18   Court proof positive that that assessment has been paid based

19   upon specific language in their certificate of release of lien.

20        They can't change their story now to say that it's

21   something else.  The IRS is free to do whatever they want to,

22   at some point in time, amend their claim, change it, or what

23   have you.  I don't really care.  I don't care whether or not

24   the IRS ultimately has a valid claim or it doesn't.

25        What I care about are the set of facts that the

**KOSSOFF PLLC**

22

1   trustee has adduced in a complaint, which I've taken to task,

2   and which basically demonstrates that they failed to state of

3   cause of action using the IRS as a predicate creditor as those

4   facts are established today.

5          The fact that the trustee wants to unmarry himself to

6   those facts is, I understand, more or less a desperation move,

7   because he can't prevail based upon the alleged facts.  And for

8   this Court to then allow him to do that would basically be

9   tantamount to trampling over every doctrine of litigatory

10  estoppel that exists.

11         The Court has already said that they will not give

12  them the right of a surreply.  This is a sur, sur, surreply.

13  This is a de novo attempt to basically recast their entire

14  complaint without having the causes of action dismissed.

15         What you're having here is that these causes of action

16  should all be dismissed, based upon the facts as alleged in the

17  complaint, which I've shown beyond cavil, cannot form the basis

18  of the IRS being a predicate creditor.

19         If facts change after the fact, the IRS files an

20  amended proof of claim, the trustee thinks that they can make a

21  motion to amend their complaint after this dismissal, and they

22  somehow surmount the estoppel arguments and what have you, I'd

23  be pleased to meet it at that time.

24         But this is just a procedural, in my mind, circus by

25  the trustee to try to basically escape from the reality, on a

**KOSSOFF PLLC**

23

1  number of different levels, that these proceedings that are

2  predicated upon the IRS as a predicate triggering credit must

3  be dismissed.

4        THE COURT:  Okay.  I hear you.  I appreciate your

5  position, Mr. Kossoff.  I think that the position you're

6  articulating fails to recognize that the Court has discretion,

7  in any motion to dismiss, to grant dismissal with or without

8  prejudice to amend.  I'll start with that observation.

9        My ruling on intervention and teeing up a potential

10  dispositive motion, as you set forth, acknowledged the

11  possibility that the trustee could amend its pleadings.  And I

12  think -- I appreciate your invocation of various estoppel

13  doctrines, and you're going to be free to argue that at the

14  appropriate time.

15        But it strikes me that the trustee has come up with a

16  orderly method of trying to front-load the status and extent,

17  if any, of the IRS claim, which then can be taken into account

18  in your desired dispositive motion or otherwise, and I should

19  add, any other defendant's intended defense and motion.

20        And I mean, we have what at least originally were

21  something in the order of sixty adversary proceedings.  I don't

22  know how many of those turn on the status of the IRS claim, in

23  part, but it strikes me that a centralized method for coming to

24  grips with what the true facts are concerning the IRS claim is

25  going to be beneficial, in cases that directly affect you, Mr.

**KOSSOFF PLLC**

24

1   Kossoff, and in cases to which you're not a party, but that may

2   have some indirect effect you alluded to.

3          So I'm saying a lot of words, but this boils down to,

4   I hear what you're saying, I think this is going to be done in

5   a way that preserves your defenses and your arguments,

6   including with regard to estoppel effect and whether the

7   trustee should or should not be permitted to amend.

8          I will specifically say that -- and that dismissal of

9   an adversary then, with leave to attempt to reopen, restart, or

10  vacate a dismissal is not how this is ordinarily done and is

11  inefficient.  It's much better to consider up front whether

12  there's an amendment of the pleadings that are required and

13  permissible.  And I think that nailing down the IRS proof of

14  claim status first is going to be consistent.

15         MR. KOSSOFF:  Your Honor --

16         THE COURT:  Hang on, hang on.  Don't interrupt, Mr.

17  Kossoff -- is going to be consistent with judicial efficiency

18  and trying to meet the objective of, as promptly, as reasonably

19  possible, and as cost effectively achieving resolutions of all

20  of these various cases.  Okay?

21         All right.  What did you want to say, Mr. Kossoff?

22         MR. KOSSOFF:  I just want to say again that I put my

23  formal objection on the record to having anything substantive

24  done at this point in time because of the fact that I have not

25  been able to view the seminal decision that Your Honor

**KOSSOFF PLLC**

25

1    basically wrote that is the predicate for this hearing.  And I

2    haven't even been given the courtesy, from trustee's counsel,

3    of telling me about this hearing on a JPEG email, or allowing

4    me to --

5            THE COURT:  Okay.  I want to add one thing.  Mr.

6    Kossoff, I have to add one thing about this, which is I

7    think -- I am certain you know that we have, essentially, on a

8    monthly basis, a day designated to all matters involving or

9    springing from the Kossoff PLLC bankruptcy.  And this is that

10   day for October.  I believe the date for that in November is

11   going to be November 29.  So I understand your complaints about

12   not having received an email.  And I guess now we know --

13           MR. KOSSOFF:  If there's a motion to be made -- if Mr.

14   Berger is proposing a motion that basically changes and alters

15   a decision that I have not yet seen, then at least I'm owed the

16   courtesy of having that put it into writing so that I can

17   respond to it and make a record for appeal if I deem it

18   necessary.

19           THE COURT:  Okay.

20           MR. KOSSOFF:  I have not been given that courtesy.

21   And I would also say, Your Honor, that whether or not the IRS

22   has a valid claim, or doesn't have a valid claim against the

23   estate, does not translate out into whether or not it be used

24   as a triggering creditor pursuant to Section 544(b).

25           So your prior formulation in a decision that I haven't

**KOSSOFF PLLC**

26

1   seen seems to be the right one because it's in the right

2   procedural cast.  And the right procedural cast is does the IRS

3   claim serve -- can serve as a basis for a 544(b) being a

4   triggering creditor, not whether it has a claim, or a valid

5   claim, or not, but whether or not it can be used.

6           And as I've indicated to this Court, that the cases

7   are legion on the fact that going from Section 6321, 6122

8   (sic), 23, of the Internal Revenue Code, and cases in their

9   aftermath, that once the IRS has filed a notice of lien, as

10  they have in this case, that they then transfer into

11  becoming -- and that notice of lien is filed before a

12  bankruptcy petition filing, they are transferred into a status

13  of a secured versus unsecured creditor.  So --

14          THE COURT:  Okay.

15          MR. KOSSOFF:  -- under those facts alone, I would

16  basically be contesting any such motion by Mr. Berger, and I

17  would be reiterating the fact that -- I'd be using that to

18  reemphasize the fact at any hearing that you had ordered in an

19  amended decision that -- in a decision that I have yet to see,

20  I would then be bringing that up again.

21          THE COURT:  Okay.  Mr. Kossoff, I'm going to jump in.

22  Thank you for your point.  I think all of these points are

23  points that are not being -- you're not being deprived of the

24  opportunity to make.  This is a case management conference, and

25  we're figuring out a sequencing and scheduling of things,

**KOSSOFF PLLC**

27

1    including the type of briefing and motion you're describing.

2            I'll add that Mr. Berger is not filing a motion today

3    or arguing a motion.  He's just -- we're here on a case

4    management conference.

5            Okay.  Mr. Berger, go ahead.

6            MR. BERGER:  Simply, Your Honor, we discussed today's

7    hearing date during the last hearing.  We can figure out if it

8    needs to be to have better notice to Mr. Kossoff of hearing

9    dates, but he was a participant in last month's hearing.  I'm

10   looking at the transcript at page 52.  Ms. Nester and you

11   designated today as the omni hearing date for the month.

12           And simply for the record, the trustee and we disagree

13   with all of the factual and legal arguments Mr. Kossoff just

14   made, but this is not a forum to argue the particularities of

15   those.  We'll address all of those in the motion that we'll

16   file, hopefully in the near term.

17           THE COURT:  Okay.  Got it.  I'm going to add -- thank

18   you.  I'm going to add two facts just for Mr. Kossoff's

19   understanding.  I'm told that the Court mailed the -- first

20   off, I entered the decision that's been discussed today on

21   October 17th, I think in the evening, but the mailed copy was

22   sent by the Court to Mr. Kossoff, but not until the 20th.  So

23   there was a slight delay in getting it out.  And as a result, I

24   suspect that you just haven't received it, because today's the

25   25th, and that straddles a weekend.  So it is coming, and

**KOSSOFF PLLC**

28

1  that's the status.

2       Look, I will just say the Court has case management

3  authority --

4       MR. KOSSOFF:  Hold on one second, Your Honor.  Sorry,

5  Your Honor.  That was just the guard asked me something.

6       THE COURT:  Yeah, I could see.  No problem, Mr.

7  Kossoff.

8       All right.  Look, let me cut to the chase.  We're here

9  on a case management conference, effectively, in the main

10 bankruptcy case that affects multiple adversary proceedings.

11 All that I am being presented with is a request, a proposal

12 that other potential motions be held in abeyance briefly while

13 the trustee files a motion that the trustee believes will bring

14 some clarity and certainty to the status of the IRS proof of

15 claim, without prejudice to anybody's arguments and contentions

16 they may want to make, which very much include the types of

17 contentions Mr. Kossoff has made on the record today.

18      I conclude that is appropriate and consistent, both

19 with judicial economy and with the needs of all parties to

20 obtain the most cost-effective and fair and merits-based

21 outcome possible of all of these matters.  And so I'm going to

22 authorize -- I should say this is without prejudice to hearing

23 from anybody else, any other defendants in any of the

24 adversaries who want to push back on this, but my strong

25 intention is to, unless someone persuades me otherwise, is that

**KOSSOFF PLLC**

29

1    I'm going to authorize the trustee to proceed in that manner.

2         We'll hear about specific timing.  And what I'll do is

3    hold off on adversary proceeding specific motions, both

4    including Mr. Kossoff's intended intervention motion, in

5    another similarly postured adversary, and other matters, so

6    that we will move with dispatch on resolving the IRS issues, as

7    the trustee proposes, and then we can turn to what the

8    implications of that may be for specific adversaries,

9    including -- and that includes specifically the Perevoski case

10   number -- what is it, 22-01141, in which the Court recently

11   issued its ruling.  Yes, that is correct, 22-01141; Perevoski

12   is the name of the lead defendant.

13        Okay.  So Mr. Berger, let me -- well, let me pause.

14        Mr. Kossoff has been heard from.  Is there anyone else

15   representing any of the defendants in the adversaries who wants

16   to be heard on this sequencing issue?

17        Yes, Mr. Bolton.

18        MR. BOLTON:  Thank you, Your Honor.  David Bolton,

19   representing the estate of Phyllis Kossoff.

20        I'm not going to push back on the procedure.  I

21   understand it.  I just want to make sure that, by not pushing

22   back on the procedure, we're not waiving any substantive

23   rights.  I know we're not.  I just want to put it on the

24   record.  So --

25        THE COURT:  That's fair.  I understand why you want to

**KOSSOFF PLLC**

1   do it.  I've tried to be very explicit, in about five ways,

2   that nobody's waiving any rights, and that is indeed my

3   intention.  And if the trustee comes up with a sixth way that

4   rights were waived, I'm going to say, no, not so.  Okay?  So

5   you're protected.

6           Any other defendants want to be heard on this?

7           Okay.  No one said yes.  All right.  So let me come

8   back to, I think, probably Mr. Berger, about can we sort of --

9   I'll use an ugly bureaucratic word; can we concretize this

10  somewhat?  What would you propose?

11          MR. BERGER:  Well, first, by way of simple -- a nuts

12  and bolts kind of approach on this issue for now, we can start

13  preparing papers in our office.  We can't control how quickly

14  someone from the U.S. Attorney's office is engaged, although we

15  made clear to the IRS representative this morning that we want

16  to move quickly.  Are you --

17          THE COURT:  Sorry, do you have a point of contact at

18  the U.S. Attorney's office?

19          MR. BERGER:  Not currently.  And the IRS

20  representative we spoke with this morning said that she would

21  try to get that contact for us today.

22          THE COURT:  Okay.  I am just going to tell you that I

23  know the civil chief there -- and you want SDNY, yes?

24          MR. BERGER:  Correct.

25          THE COURT:  Yeah, is Jeff Oestericher,

**KOSSOFF PLLC**

31

1  O-E-S-T-E-R-I-C-H-E-R.  And the cochiefs of tax and bankruptcy

2  are Lawrence Fogelman and J.D. Barnea, B-A-R-N-E-A.  And so

3  those are all good names to know if you need to find government

4  people with litigating authority in this area.  So you could

5  try to reach out to them directly, and you might cut through

6  some indirect communicating that could otherwise occur.

7          MR. BERGER:  We appreciate those observations, Your

8  Honor.  I --

9          MR. KOSSOFF:  Is this a motion for a stay --

10          THE COURT:  Hang on a second.  Hang on.  Hang on, Mr.

11  Kossoff.  Okay.  Go ahead, Mr. Kossoff.

12          MR. BERGER:  I'm sorry, Your Honor --

13          THE COURT:  Let's just hear what Mr. Kossoff has to

14  say, and then I'll come back to you, Mr. Berger.

15          What was that, Mr. Kossoff?

16          MR. KOSSOFF:  Is this a motion for a stay of the

17  motions that I filed in or -- a motion for a stay in the

18  Perevoski and the estate of Phyllis Kossoff proceeding until

19  such time as the IRS amends its claim?  I'm just not sure that

20  I understand what this --

21          THE COURT:  I construe it not -- I'm sorry, Mr.

22  Kossoff.  Let me -- I construe it not as a motion for a stay,

23  but as a request that I exercise my case management discretion

24  to set briefing schedules in a way that's consistent with

25  protecting all parties' rights and defenses and obligations,

**KOSSOFF PLLC**

32

1   and then also with judicial economy and the proper sequencing

2   of consideration of issues in a way that I can --

3          MR. KOSSOFF:  The reason that I --

4          THE COURT:  Hang on.  Don't interrupt, Mr. Kossoff,

5   Don't interrupt.  Let me finish the sentence.  I think where

6   you interrupted I was saying with my discretion to set case

7   management schedules in a way that I believe appropriate and

8   best suited to lead to cost-effective, timely, and fair, and

9   orderly disposition of matters before me.

10          And I think this is the best way to do that, because I

11   have many adversary proceedings before me which present similar

12   issues, and nailing down the factual backdrop before we

13   consider application in multiple adversaries is the best and,

14   far and away, the most orderly way to handle it.  Okay?  So

15   that's what I'm doing.

16          MR. KOSSOFF:  I'm just at a loss.

17          THE COURT:  So the --

18          MR. KOSSOFF:  I don't understand what the issue is

19   that we're briefing, is what I'm saying, Your Honor.  What is

20   this briefing schedule -- what are the issues that are supposed

21   to be related to this briefing schedule?

22          THE COURT:  Well, first off, the trustee has not yet

23   filed its contemplated initial brief, and it has described it

24   as being a motion for approval of what it contemplates to be a

25   settlement with respect to the IRS proof of claim, in which it

**KOSSOFF PLLC**

33

1  said all parties are going to be able to take robust discovery

2  regarding that proof of claim and the status of the IRS claim

3  and validity of the IRS claim.

4          And so that is going to -- the exact scope of the

5  relief that's sought will be stated in the motion when it's

6  filed, which hasn't happened yet.  Then there will be briefing

7  on that and argument on that.  And if there's requests for

8  discovery, that will be available, presumably.  And then -- so

9  it's a sequencing question.  That will occur, and then we will

10 see where we are and unleash whatever motion practice any party

11 in the various adversaries believes to be appropriate once that

12 has occurred.

13         Again, I'll just ask Mr. Berger to make sure, again,

14 that I'm accurately describing the contemplation.

15         MR. BERGER:  Yes, Judge.

16         THE COURT:  Okay.  So that's it.

17         All right.  So Mr. Kossoff, I'll tell you, I

18 appreciate your concern.  I appreciate your eagerness to get to

19 the issues you want to get to.  You've heard, a number of

20 times, all defenses are going to be preserved, and that

21 includes all of the contentions you want to make.  But it's my

22 determination that pausing the adversary-by-adversary

23 proceeding fractured litigation that might break out in order

24 to first achieve a centralized determination of the IRS claim

25 status is what we need to do to achieve a cost-effective, fair

**KOSSOFF PLLC**

34

1  resolution.  So that's what we'll do.  Okay?

2        So Mr. Berger, you don't yet know, I think, when

3  you're going to be able to file your motion, partly because you

4  have uncertainty about what's happening on the IRS/government

5  side, right?

6        MR. BERGER:  That's right.  I would hope to be able to

7  file that motion within the next two weeks, but that's my

8  aspiration.  I can't be sure of the timing.

9        THE COURT:  Okay.  So here's what we need to do.  I'm

10 going to emphasize the need for speed to the trustee,

11 recognizing you don't control all aspects of the situation.

12 I'm going to put it down for further continued status

13 conference at the next scheduled Kossoff PLLC date, which I

14 believe is November 29.  Is that right?  Whatever it is.

15       MR. BERGER:  Hold on.  I'm sorry.

16       THE COURT:  Let's get that on the record.  My calendar

17 tells me November 29.

18       MR. BERGER:  You're right, Your Honor.  I have it on

19 my calendar for November 29 at 10 a.m. as well.

20       THE COURT:  Okay.  And even more authoritatively, my

21 deputy has texted me that that is correct.  Okay.  So we're

22 good.

23       All right.  So Mr. Kossoff -- and we'll certainly have

24 arranged for you to be produced for that conference, again, Mr.

25 Kossoff.

**KOSSOFF PLLC**

35

1          And I will specifically urge the trustee, if you're

2     ready to file a motion earlier than then, that's great.  Don't

3     wait for the 29th, and particularly because Mr. Kossoff has

4     some communication difficulties.  If you do file your motion,

5     let's just say responses won't be due before November 29th, and

6     we can have a procedural discussion on November 29th about any

7     unresolved discovery desires or issues or disputes that may

8     exist, and we'll set the remainder of the briefing schedule.

9     But let's at least get the ball rolling with the filing of the

10    motion.

11         Is that the way to go, Mr. Berger?  Do you have any

12    better ideas?

13         MR. BERGER:  I think that's all fine, Your Honor.  We

14    appreciate it.  We appreciate Your Honor's discretion and

15    ruling on the record today.  To the extent that it's necessary,

16    perhaps a so ordering would be in order.

17         THE COURT:  Oh, yes.  I'm going to so order the

18    procedural ruling that I articulated earlier.  That's right.

19    And I'm also going to direct the trustee to order the

20    transcript, which I think the trustee always does anyway.  But

21    we'll want to memorialize it.

22         MR. BERGER:  We'll do that, Judge.  And so that there

23    is no mistake about timely notice on this pleading, we'll

24    Federal Express it to Mr. Kossoff.

25         THE COURT:  Great.  Thank you.  Okay.  So look, that,

**KOSSOFF PLLC**

36

1   I think, gives us an overarching framework for how we're going

2   to move forward on many of these.  And I think --

3          MR. RICHMOND:  Your Honor?

4          THE COURT:  Yeah.  Who is that, Mr. Richmond?

5          MR. RICHMOND:  Good morning.  Andrew Richmond from

6   Pryor Cashman, on behalf of Roc Le Triomphe and Hampton

7   Management.

8          I'm just curious if the IRS motion is then going to

9   now push back the potential oral arguments related to our --

10          THE COURT:  I wanted to ask the same question.  I

11   guess it's your motion, right, Mr. Richmond?

12          MR. RICHMOND:  Correct.  Correct.

13          THE COURT:  Do you think it should push back your

14   argument or not?

15          MR. RICHMOND:  Well, the IRS issue relates to our case

16   as well.  It was not addressed head-on in our motion.

17          THE COURT:  Right.

18          MR. RICHMOND:  But it is -- potentially, how our

19   motion comes out might actually have an effect, as well as the

20   IRS issue, because that could potentially cut out a significant

21   portion of the claim.

22          THE COURT:  Right.  I'll tell you -- yeah, let's just

23   let's just talk this through, and I'll stick with you, Mr.

24   Richmond, and then come back to whoever is handling this issue

25   for the trustee.

**KOSSOFF PLLC**

37

1          I've read the papers just enough to conclude that my

2     notion that this might be a simple motion I could resolve

3     without argument is now dispelled.  It's substantial.  I'll

4     want argument on it.  It strikes me as not turning directly on

5     the status of the IRS claim, certainly not in its entirety.

6     And so it's seems to me -- so really, I'm at your disposal.

7          Mr. Richmond, if you want your motion to be heard and

8     you think it's going to be productive to do that, I'm all

9     yours, and I don't want to keep you waiting.  If you have an

10    independent preference of your own, to wait to see where the

11    IRS claim ends up before you invest further effort on your

12    motion, I'd be open to that as well.  So what's your

13    preference?

14          MR. RICHMOND:  I mean, I guess we would like

15    resolution of our motion, so I guess maybe we'd prefer to move

16    it forward.  It also relates to the issue of discovery.  Just

17    as discovery is moving forward with this pending motion, it

18    might just be helpful to have a quicker resolution of our

19    motion to get additional clarity on --

20          THE COURT:  Right.

21          MR. RICHMOND:  -- where the case is going.

22          THE COURT:  Okay.  So that's fine.

23          Mr. Berger, are you good with -- or whoever is

24    handling this for the trustee, any problem with moving forward

25    substantively on that motion?

**KOSSOFF PLLC**

38

1          MR. BERGER:  Ms. Nester is smarter than I am on this.

2          MS. NESTER:  Good morning, Your Honor.  Minta Nester,

3   counsel for the trustee.

4          My thinking is only that, to the extent that there is

5   a potential amendment of the complaint coming out of the IRS-

6   related proceedings, does it make sense to pause or adjourn

7   this motion temporarily so that we're not, sort of, dual

8   tracking those issues, just sort of thinking out loud?

9          THE COURT:  Yeah, I understand.  I'll come back --

10  I'll just sort of reiterate that my take, from having read but

11  not super closely studied the papers, is that this motion does

12  not turn on the status of the IRS claim or likely amendments

13  relating to that.  And so I don't see a need to wait.  And it

14  also seems a little, potentially, unfair to make the movants

15  wait yet more to see the outcome of that amendment.  But Ms.

16  Nester, if that's based on a misimpression, you can correct me.

17         MS. NESTER:  Minta Nester, counsel for the trustee.

18         No, Your Honor, we share a similar reading of the

19  papers, that it's not tightly bound to the IRS issue.  The only

20  thought was perhaps iterative amendments of a complaint.

21         THE COURT:  Oh, I see.  I think I've made the movants

22  wait a little longer than I would prefer already.  So I think

23  I'd sort of like to make myself face the motion and decide it

24  for you all, and let you all have your hearing, because you're

25  going to, sooner or later, need clarity, as a matter of law,

**KOSSOFF PLLC**

39

1   both on the issues raised by this motion and the IRS piece.

2   And we may as well pursue both at the same time rather than

3   staggering it and pushing off progress that could be

4   occurred -- that could be achieved simultaneously.  Okay?

5        And I say that sensitive to the reality that that's

6   going to make the trustee team work even harder, and it's going

7   to make me work a little harder too.  But that, I think, is

8   just kind of the way it is.  Okay?

9        So let's translate that.  Do you immediately have a

10  preference between -- I'll come back to Mr. Richmond -- between

11  arguing it on the 29th or arguing it on some earlier in

12  November date?

13       MS. NESTER:  Your Honor --

14       THE COURT:  Oh, sorry.  I'll ask Mr. -- I'm going to

15  ask each of you, but I just said Mr. Richmond.

16       MS. NESTER:  Okay.

17       MR. RICHMOND:  So for me personally, I don't have an

18  issue.  I know my colleague, Richard Levy, will be

19  participating in the event.  He's unavailable.  I'm trying to

20  communicate with them via email, but assuming his schedule is

21  available on the 29th, we have no issue.

22       THE COURT:  Okay.  And how about you, Ms. Nester?

23       MS. NESTER:  Your Honor, we're available on the 29th

24  as well.

25       THE COURT:  Right.  Obviously, you're spoken for.

**KOSSOFF PLLC**

40

1      Okay.  So let me do this.  I will hear it not later

2   than the 29th, absent agreement otherwise.  You all can talk

3   offline.  If you end up thinking, gosh, let's clear this out by

4   doing it earlier, contact chambers and ask for an earlier

5   argument date.  I need at least two weeks to get ready, and I

6   need to know that I should start that process.  So don't pick a

7   date that's earlier than two weeks out from when you contact

8   chambers for the date, I guess, is what that translates to.

9      So put more simply, you can probably be seen either in

10   mid-November, or the 29th, which is the Wednesday following

11   Thanksgiving.  So we'll be a little bit clear of the

12   Thanksgiving holiday at that point.  Okay?

13      So either way -- so bottom line, communicate about

14   your respective preferences, and then get in touch with

15   chambers, and just confirm when it's going to be, and we'll

16   hear it accordingly.  Okay?

17      MS. NESTER:  Thank you, Your Honor.  And just to be

18   clear on next steps, would you like us to file a notice of

19   hearing?

20      THE COURT:  Yes.  Once you firm up the date and then

21   tell chambers, please file a notice of hearing on that, and

22   that that will be helpful.  Thank you.

23      Okay.  Mr. Richmond, does that cover you?

24      MR. RICHMOND:  Yes.  Thank you very much.  I

25   appreciate it.

**KOSSOFF PLLC**

41

 1          THE COURT:  Sure.  Okay.  And remind me, is Mr.

 2     Kossoff a party in that adversary?  He is right, but not a

 3     movant?

 4          MR. RICHMOND:  Correct.

 5          THE COURT:  Okay.  So Mr. Kossoff, I think -- we're

 6     going to enter an order, unless you waive it, which you don't

 7     at all have to do.  We'll enter an order so that you can attend

 8     the argument as well.  It'll be by --

 9          MR. KOSSOFF:  I'd like to be present, Your Honor.

10          THE COURT:  Okay.  Absolutely.  So we'll do it by

11     Zoom, which facilitates Mr. Kossoff's attendance.  Or if you

12     prefer to do it in person, we can do it hybrid, so that he can

13     be patched in, and it would be in the courtroom.  So talk among

14     yourselves what you prefer, as well.  I can do it either way.

15     All right.  There's no risk of testimony, is there?

16          MR. BERGER:  This is --

17          MR. RICHMOND:  No, there shouldn't be.  It's just

18     strictly legal arguments.

19          THE COURT:  Okay.

20          Yeah, go ahead, Mr. Berger.

21          MR. BERGER:  No, no, I agree with Mr. Richmond.  It's

22     a legal argument dispositive motion.

23          THE COURT:  Right.  Okay.  So I can do it by Zoom.  If

24     you do feel like coming in, that would be kind of fun for me.

25     I'm starting to like to see people, and we are open for

**KOSSOFF PLLC**

42

1   business in person.  But I'll let you choose, okay, in person

2   or Zoom.  But let's specify and -- so specify a date and a

3   format.

4        And I just wanted to state assurance that Mr. Kossoff

5   definitely will be given notice of that, and the trustee can

6   just email Mr. Kossoff when I have a date and format set up.

7   And Mr. Kossoff will participate remotely, either patched into

8   the courtroom, if it's in person, or just via Zoom, if it's

9   that way.  Okay?

10       All right.  So now, let's see, I think we're probably

11   ready to turn back to the granular walk through the adversaries

12   on the calendar for today, unless I'm mistaken.

13       MR. BERGER:  I think you're right, Your Honor.  Before

14   I pass the baton to my colleagues, I will tell you, in item

15   number 1, the trustee's adversary proceeding against VNB --

16   that's Valley National Bank -- adversary 22-01113, I can't

17   recall if my colleagues let Your Honor know, but we have

18   reached an agreement with -- a settlement agreement with

19   Valley.  We have a signed stipulation, and it will be part of

20   the trustee's next omnibus settlement approval motion.

21       THE COURT:  Okay.  The defendants are VNB New York, et

22   al.  Will there be remaining aspects of the case in play, or is

23   it resolved?

24       MR. BERGER:  No.  It's only settled as to the Valley

25   defendants.

**eScribers, LLC**

**KOSSOFF PLLC**

43

1          THE COURT:  Okay.  Great.  And so I am inferring

2     certainly we'll be talking about it and looking at a 9019 at

3     the next hearing date of November 19th, and I think we

4     should --

5          MR. BERGER:  The 29th.

6          THE COURT:  Sorry?

7          MR. BERGER:  November 29th.

8          THE COURT:  Oh, I misspoke.  Yeah, November 29th.

9     Sorry.  That was a verbal typo, if there is such a thing.

10    Okay.  November 29th.  And we'll just set a continued

11    conference for the remainder of the case for that time as well?

12         MR. BERGER:  Very good, Judge, yes.

13         THE COURT:  Okay.  Great.

14         MR. BERGER:  And with that, Your Honor, with Your

15    Honor's permission, I'll pass the baton to my colleagues who

16    can address the remainder of the agenda.

17         THE COURT:  Okay.  That's great.  So let's --

18         MR. KOSSOFF:  Your Honor, I don't want to -- I don't

19    want to interrupt.  It's Mr. Kossoff again, but my time to be

20    on this phone is limited, so --

21         THE COURT:  Right.

22         MR. KOSSOFF:  -- if there are cases that involve me --

23         THE COURT:  Yeah.  Let's find out if there's any

24    other -- Mr. Kossoff, are you aware of any other matters you

25    want to be heard on that are on the calendar today?  What we're

**KOSSOFF PLLC**

44

1  doing is really now marching through case management on

2  remaining adversaries.

3          MR. KOSSOFF:  Yes.  I made a request to Your Honor, as

4  you might recall, to extend my written document demand fact

5  discovery on the Roc Le Triomphe case to the end of this month.

6          THE COURT:  Okay.  That seems fine to me, especially

7  because we're slowing things down in light of the IRS thing.

8  Is that -- but the trustee -- let me hear from the trustee

9  about that.

10          MS. NESTER:  Good morning, Your Honor.  Minta Nester,

11  counsel for the trustee.

12          What I believe Mr. Kossoff is referring to is the

13  letter that he's docketed in the adversary proceedings in

14  Valley National Bank, which is 22-01113, and Roc Le Triomphe,

15  which is --

16          THE COURT:  Right.

17          MS. NESTER:  -- 22-01158.  In that letter, he raised

18  various points, including contentions that certain issues were

19  not raised before this Court or brought to chambers.  So if I

20  could just take a minute to speak to that before moving on to

21  the secondary point --

22          THE COURT:  Sure.

23          MS. NESTER:  -- which is scheduling.  As Your Honor is

24  aware, we are all laboring under uncommon circumstances here,

25  and we endeavor to be accurate reporters.  It's a

**KOSSOFF PLLC**

45

1  responsibility we take very seriously.  So I wanted to let Mr.

2  Kossoff know, to the extent he was not aware, that the issues

3  he raised in his October 6th email to counsel, related to

4  summary judgment timing and extensions of the Roc discovery

5  schedule, were sent, verbatim, to chambers in the submission

6  email of the VNB amended proposed scheduling order.  And that

7  order was entered that same day.  And we sent that over the

8  same day.  And that order was entered without change and

9  without conference.  I note that the amended CMO in Roc Hampton

10  had been entered the day previously.

11       And that sort of brings me to Mr. Kossoff's second

12  point, which is the further extensions of the discovery

13  schedule.  Mr. Kossoff seeks to extend a deadline that occurred

14  in July, July 15th, if I'm not mistaken, and nevertheless his

15  first attempt to extend that, and extend it significantly, has

16  been made in October, long after that deadline had expired, and

17  even after this amended CMO had been entered.

18       He does so without explaining the basis to extend this

19  deadline.  He does not say that he was incapable of meeting the

20  deadline due to his incarceration.  Instead, he says that he'd

21  like to serve additional discovery requests.  And we don't know

22  why additional discovery requests, at this time, are needed or

23  appropriate.

24       THE COURT:  Okay.  Got it.

25       So Mr. Kossoff, let me ask you to just explain

**KOSSOFF PLLC**

46

1  specifically what you want to do.  It sounds like you're

2  wanting to -- you wanted an extension till October 30th to

3  serve additional --

4        MR. KOSSOFF:  As a matter of fact, I've already sent

5  out the written discovery demands in the Roc Le Triomphe case,

6  in anticipation of Your Honor granting my request.  I don't see

7  why Your Honor wouldn't grant my request.  You granted the

8  exact same similar request to the trustee in the VNB matter.

9        THE COURT:  Okay.

10        MR. KOSSOFF:  And --

11        THE COURT:  Hang on.  Hang on.  Let me -- I'm just

12  trying to track -- let me first make sure that I'm

13  understanding the right thing.  So are we -- that we're talking

14  about the same request.  I think, by a letter dated October

15  20th, you requested to have until October 30th, which is five

16  days from now, to serve additional document requests, right?

17        MR. KOSSOFF:  Yes.

18        THE COURT:  With production in December.  And that's

19  in the VNB and Roc cases; is that right?

20        MR. KOSSOFF:  Yes.

21        THE COURT:  Okay.

22        MR. KOSSOFF:  Well, with respect to the VNB case, I

23  believe that was already granted, based upon the order that I

24  saw, where you extended written discovery requests until the

25  31st --

1          THE COURT:  You're right.  Okay.  Yeah.  I'm look --

2          MR. KOSSOFF:  -- if I'm not mistaken.

3          THE COURT:  Yes.  I'm interrupting you to agree with

4    you.  I'm looking at an order I entered in the VNB case, which

5    is -1113, and that says, among other things, each party may

6    serve written discovery requests no later than October 30.  So

7    you don't even need an extension for that.  That's done.

8          MR. KOSSOFF:  Right.

9          THE COURT:  And then I'm looking at a prior scheduling

10   order, entered October 5th, in the case against Roc Le

11   Triomphe, 22-01158.  Oh, I see.  And there it has -- it is

12   preserving a date of July 15th.  The order -- and it calls for

13   document production to be complete by October 16th, which was

14   eleven days.

15         I will tell you, I think what that October 5th order

16   did is modify subsequent dates, and we just left alone the

17   written discovery deadlines as they had previously existed,

18   because I didn't understand those to be affected.

19         All right.  Here's what I want to do.  Well, I'm not

20   sure how -- I don't have a fully formed idea on this.

21         Mr. Kossoff, can you just explain what you're trying

22   to get in the Roc -- what your requests seek in the Roc Le

23   Triomphe case?

24         MR. KOSSOFF:  When I set out my initial discovery

25   requests, I realized after the fact that I'd only limited them

**KOSSOFF PLLC**

48

1  to the VNB matter as opposed to the Roc Le Triomphe matter.

2  And everything -- and as a result, I need to actually make

3  those requests in the Roc Le Triomphe matter as well, for

4  procedural, in order for it to be binding.

5       So in as much as the trustee was looking for an

6  additional date in connection with the VNB matter, to extend

7  their ability to put written documents -- to respond, I guess,

8  to, or for people to submit written documentary requests in the

9  VNB case, I had said ,in my prior email, which now I understand

10  didn't get to the Court until after they issued the order in

11  the Roc Le Triomphe, that I be given the similar courtesy in

12  the Roc Le Triomphe case.

13       THE COURT:  Okay.  So I'm a little bit -- the phrase

14  shooting in the dark comes to mind.  It's not the best phrase.

15  But here's what I think I would like to do.

16       You've already sent out the -- first off, I don't need

17  to take any action with respect to the VNB case because the

18  discovery order already --

19       MR. KOSSOFF:  That's correct.

20       THE COURT:  -- makes your request timely.  As to the

21  Roc Le Triomphe case, I think I'd like the trustee receive and

22  review the discovery requests you just sent out.  To the extent

23  it's just catching you up with document production that the

24  other parties in the Roc Le Triomphe case, I'm going to just

25  direct the trustee to send its production set, that's already

**KOSSOFF PLLC**

49

1   been given to other defendants, to Mr. Kossoff.

2        To the extent the trustee sees something prejudicial

3   about the scope or timing of the request, I'm going to -- I

4   guess I will allow the trustee to object based both on timing

5   and on substance of the requests.  However, I'm going to

6   express a preference just to fold this into the workflows and

7   treat it as a timely document request.  So I guess I'll say --

8   let me try to express that as a ruling on the specific request.

9        So I'm going to require that the trustee entertain the

10  request as if it were timely.  And unless the trustee comes

11  forward, subsequently, with objections based on timeliness or

12  substance, I will leave it at that.  But this is without any

13  prejudice to any argument that the trustee may want to make.

14       Partly my issue is, because I don't know the substance

15  of the request fully, if it's opening a whole other front or

16  line of inquiry, that could be excessively broad and bog down

17  the litigation in an inappropriate way, I'll keep timeliness

18  arguments as well as substance available to the trustee.  Okay?

19  That's a very, kind of, squishy ruling, but I think it's

20  practical.

21       MR. KOSSOFF:  I'm just -- Your Honor, I'm really taken

22  aback.  I made a simple request to extend my written document

23  demand discovery in the Roc Le Triomphe matter to basically

24  parallel the same request that you've already granted and the

25  right you've given to the trustee to extend their written

**KOSSOFF PLLC**

50

1   document demands.  This is discovery, and I --

2          THE COURT:  Mr. Kossoff -- Mr. Kossoff, I have to cut

3   you off because I basically said yes to your request.  Okay?

4          MR. KOSSOFF:  No, you didn't, Your Honor.  You said

5   that they could object to timeliness.  That's not saying yes.

6          THE COURT:  I --

7          MR. KOSSOFF:  My proposal is that you grant the

8   extension, subject to their rights, as they always have, to

9   object to whatever documents that I've demanded.  But to

10  basically allow them, after the fact, this squishy ruling to

11  then say that it's not timely, is not granting my request.

12         THE COURT:  Well --

13         MR. KOSSOFF:  And I just think that that's not --

14         THE COURT:  No, Mr. Kossoff, look, I think it's --

15  first off, I've stated my ruling, so I don't want to have

16  continued back and forth about it.  I will just say I disagree

17  with the characterization of the ruling because I am allowing

18  you to serve -- I am granting and deeming timely the serving of

19  the request, just subject to any objection from the trustee,

20  which may consider timing as a factor.  I would conceive of

21  that as going to the proportionality and burdensome issues that

22  may be raised.  Okay?

23         But Mr. Kossoff, I am deeming timely your request and

24  require a response.  Okay?  And then we'll take it from there

25  going forward.

**KOSSOFF PLLC**

51

1        All right.  Mr. Kossoff, your same letter expressed --
2    asked about filing summary judgment motions in the cases to
3    which you're a party.

4        MR. KOSSOFF:  Permission to file.

5        THE COURT:  Correct.  So just to try to clarify,
6    simply, the Court's local rules require a pre-motion conference
7    before the filing of a motion for summary judgment.  That's to
8    give us an ability to try to persuade people not to file
9    pointless motions, and also, very importantly, ability to
10   control the timing of motions.

11       My very strong preference is not to consider piecemeal
12   summary judgment motions, which means ordinarily I would
13   entertain them just at the conclusion of all discovery.
14   However, you also point out that there's a deadline for fact
15   discovery and a later deadline for expert discovery.

16       Bottom line is you can make a request, any time you
17   want, to be granted leave and have a schedule set for a summary
18   judgment motion.  I will consider whether such a motion makes
19   sense at the end of fact discovery as opposed to expert.  And
20   it might; it depends.  If it's purely a fact-driven issue that
21   expert discovery would have no bearing on, it's possible I
22   would say yes to that.

23       I will also add, as I try to when this issue comes up,
24   I don't believe the Court has authority to bar anyone from
25   filing any motion they want to, once compliance with the pre-

**KOSSOFF PLLC**

52

1   motion conference requirement is taken care of.  So I'm not

2   precluding the filing of any motion, but I'm just telling you

3   what the practice is.

4           So you would need to make a request in writing for a

5   pre-motion conference.  I would entertain it and discuss it.

6   But I'm just foreshadowing the probable outcome, which is that

7   I would say the motion might be something that I would

8   entertain at the end of fact discovery, if appropriate, and if

9   expert discovery won't affect it.  Otherwise, I likely would

10  want to wait till the end of fact -- of expert discovery.

11  Okay?

12          MR. KOSSOFF:  I don't think I'll be -- I don't think

13  I'll be making those motions until fact discovery has been

14  completed.

15          THE COURT:  Okay.

16          MR. KOSSOFF:  For the request, is what I'm saying.

17          THE COURT:  I got it.

18          MR. KOSSOFF:  I just needed to get the clarification.

19          THE COURT:  Yeah, no, I wanted to provide it for you.

20  That's fine.  And that, far and away, makes sense, because how

21  do you know there's not a fact dispute until you see what all

22  the facts are through discovery?  So once you get the

23  discovery, you can assess.  And then, if you want to make such

24  a request, go ahead.  All right?

25          Okay.  Mr. Kossoff, I think -- the other communication

**KOSSOFF PLLC**

53

1    I've received from Mr. Kossoff we've already covered, which is

2    a desire to file a motion for intervention and to pursue

3    dismissal.  And that's already covered by the IRS discussion we

4    had earlier.

5         Mr. Kossoff, I'm sensitive we might lose you.

6    Anything else you want to specifically raise?

7         MR. KOSSOFF:  I just would try to emphasize to

8    everybody on the phone call that, if they mail materials to me,

9    they have to understand that the process here is not a linear

10   one and that it's going to take at least five to six days

11   before I see anything that's mailed.

12        THE COURT:  I got it.  Yeah, Mr. Kossoff, let me

13   reinforce that.  Let me just ask the trustee, if you're mailing

14   something to Mr. Kossoff or sending something, please just

15   develop the habit of send him a quick email saying we are

16   mailing you the following today; keep an eye out for it.

17        MR. BERGER:  We'll do that, Judge.

18        THE COURT:  Yeah, right.  That makes life easier.

19        MR. BERGER:  Yes.

20        THE COURT:  And Mr. Kossoff, then you'll know if

21   something's brewing or not, and we'll avoid some of this kind

22   of heartburn.

23        Okay.  Mr. Berger had his hand up.  Go ahead.

24        MR. KOSSOFF:  And there's just --

25        THE COURT:  Oh.

**KOSSOFF PLLC**

54

1          MR. KOSSOFF:  -- one last question that I have --

2          THE COURT:  Yeah.

3          MR. KOSSOFF:  -- before I leave, and that's on this

4    decision that I have not seen yet with respect to my motion in

5    connection with --

6          THE COURT:  Yep.

7          MR. KOSSOFF:  -- the Perevoski issue, the permissive

8    dismissal motion.  Is there anything that you've established

9    with Mr. Berger at this point?  If, in fact, you said in your

10   decision that you want to readdress the motion to dismiss by me

11   making a subsequent motion, does anything in what we just

12   discussed prevent me from doing what is in your order?

13         THE COURT:  So thank you for raising that.  And I'll

14   explain.  To really distill the ruling, it's I granted the

15   motion for permissive intervention to the extent -- so that you

16   would be permitted to file your contemplated dispositive motion

17   as a separate motion.  And I said it had to be done promptly, I

18   think, by November 8th.

19         So the thing that's changed is that November 8th no

20   longer holds.  I don't actually -- it's interesting.  I don't

21   know -- I think it makes sense for you to wait and file that

22   motion until after the IRS situation is resolved, in light of

23   the further briefing.

24         MR. KOSSOFF:  So --

25         THE COURT:  I don't know -- well, yeah, go ahead, Mr.

**KOSSOFF PLLC**

55

1    Kossoff.

2            MR. KOSSOFF:  So would you then issue an amended order

3    with respect to that date so that I can -- I don't want to miss

4    a deadline through --

5            THE COURT:  Yeah, I understand.  Let me just orally --

6            MR. KOSSOFF:  I'm perfectly capable of --

7            THE COURT:  Mr. Kossoff, let me -- I have two -- hang

8    on, Mr. Kossoff.  I have two thoughts.  One is, assuming the

9    deadline is adjusted, are you okay waiting until a later

10   deadline is set by the Court?

11           MR. KOSSOFF:  I don't have an issue with it.  I don't

12   think that, in reality, whatever they do with the IRS and their

13   claim is going to really impact my motion.  I'm perfectly

14   capable of making the motion by November 8th --

15           THE COURT:  Right.

16           MR. KOSSOFF:  -- as you put in your order, and then

17   you can hold it in abeyance if you want.

18           THE COURT:  Okay.  Here's what I want to do.  You had

19   asked if I was barring you from filing a motion, and that makes

20   me very nervous because, as a judge --

21           MR. KOSSOFF:  I just don't want to miss it, Your

22   Honor.

23           THE COURT:  -- that's a potentially prejudicial thing

24   to do.  If your concern is deadline compliance, what I'd

25   suggest is, let's have the trustee submit a proposed order

**KOSSOFF PLLC**

56

1  implementing the procedures set forth on the record, which I've

2  already orally so ordered.  As part of that, state that the

3  briefing schedule, including the deadline set forth in the

4  Court's decision of October 17th, is hereby extended to a date

5  to be specified later.  Okay?

6         And so Mr. Kossoff, then you'll have a so ordered

7  thing that will memorialize and protect you from any

8  consequences of not making that November 8th order.

9         Okay.  Mr. Hang on, Mr. Kossoff.

10        MR. KOSSOFF:  I appreciate that, Your Honor.

11        THE COURT:  Yeah, so you'll be covered.  All right.

12  And you said that was your last thing, Mr. Kossoff.  Does that

13  cover you?

14        MR. KOSSOFF:  Yes, that is.

15        THE COURT:  Okay.  Great.

16        Mr. Berger was wanting to be heard.  Go ahead, Mr.

17  Berger.

18        MR. BERGER:  Yes, and before Mr. Kossoff leaves.  Your

19  Honor, we're happy to do the order.  For administrative ease,

20  and so that there's absolutely no confusion, if it's acceptable

21  to Your Honor, we'll order the transcript on an expedited

22  basis.  And rather than trying to distill what we've been

23  discussing for the last hour, we'll refer and incorporate Your

24  Honor's ruling from the transcript, and we'll attach it to the

25  order.  And we'll --

**KOSSOFF PLLC**

57

1          THE COURT:  That's fine, except let's just say it'll

2    be docketed when it's ready.  So let's just get --

3          MR. BERGER:  Yes.

4          THE COURT:  -- the order entered and just refer to the

5    transcript.  But don't attach it because that --

6          MR. BERGER:  Okay.

7          THE COURT:  Then we have to wait for it to come in.

8    And I'll also just so order the specific discussion I just had

9    with regard to the deadline of Mr. Kossoff to file the brief in

10   the Perevoski case; it's hereby extended to a date to be

11   determined later.

12         MR. BERGER:  Thank you, Judge.  That was the second

13   thing I was going to ask for.  Thank you very much.

14         And the third, just so that it is on the horizon, and

15   we can communicate with Mr. Kossoff offline, we haven't yet

16   seen his document request, but there are voluminous documents,

17   and that may require us to work with Mr. Kossoff.  We will work

18   with Mr. Kossoff to address that situation.

19         For example, there is quite a bit in the way of bank

20   documents.  I hate to take us back to a darker time in the

21   case, but we have thousands and thousands of pages.  And while

22   our rights to object to the scope and nature of the discovery

23   requests, when we see them, are preserved, volume and

24   transmission of that type of volume to Mr. Kossoff is something

25   that we'll approach with him and try to work our way through.

**KOSSOFF PLLC**

58

1          THE COURT:  Okay.  I got it.  That sounds good.

2          MR. KOSSOFF:  The documents I've requested are not

3   voluminous.

4          MR. BERGER:  I'm sorry?

5          THE COURT:  Okay.

6          MR. KOSSOFF:  The documents I'm requesting are not

7   voluminous.

8          THE COURT:  Okay.

9          MR. BERGER:  Very good.

10          THE COURT:  So communicate offline.  Yeah, Mr.

11   Kossoff, I think what triggered Mr. Berger's remark is my

12   suggestion that he just send the whole document production to

13   you.  And that is easy for me to say and maybe not so easy to

14   do.  So if --

15          MR. KOSSOFF:  The documents are --

16          THE COURT:  I will retract that part.  If Mr. Kossoff

17   isn't looking for that, you can work around that.  But

18   communicate directly on that.

19          MR. BERGER:  Thank you for hearing me, Judge.  And I

20   think then we can move on to the balance of the agenda.

21          THE COURT:  Okay.  That's great.

22          All right.  So thanks very much, Mr. Kossoff.  You are

23   free to go whenever you like.  I think we're down to matters

24   that you're not a party to, but you're also welcome to stay, if

25   your facility will let you.  So am I right --

**KOSSOFF PLLC**

59

1            MR. KOSSOFF:  I have to get back.  I have to get out.

2            THE COURT:  Okay.

3            MR. KOSSOFF:  So thank you, Your Honor.  I'm going to

4     be signing off at this time.

5            THE COURT:  Okay.  Be well, Mr. Kossoff.  Thank you.

6            All right.  Let's turn back to the trustee for the

7     balance of the matters on for today.

8            MR. BERGER:  Your Honor, I think Ms. Nester or Mr.

9     Howard can address the balance of the adversary proceedings.

10            I will say I think my colleague, Jared Borriello -- I

11     can't see whether or not he is still on.  But as to the

12     Perevoski matter, I know that we have two defendants left, the

13     Xenopoulos defendants, with whom we are conducting discovery

14     and hopefully negotiating -- or I think -- I know we are

15     negotiating.  And then it's the decedent estate of Phyllis

16     Kossoff, for whom Pamela Kossoff has been designated as the

17     decedent estate representative.

18            And we are approaching a global negotiation with Mr.

19     Bolton representing the family members.  There are a number of

20     Kossoff family members, other than Mr. Kossoff, who are current

21     defendants and potential defendants that are covered by a

22     tolling agreement.

23            And we appreciate Mr. Bolton's participation in a

24     process where we hope to achieve a global settlement of those

25     claims.  And that would be an efficient way to resolve those

**KOSSOFF PLLC**

60

```
 1   claims vis-a-vis estate administration.

 2           THE COURT:  Okay.  I've followed everything you said,

 3   but I want to make sure I'm attaching this to the right case.

 4   This is in Perevoski, -1141?

 5           MR. BERGER:  It's in -1141.  And also number 3, Togut

 6   v. Kossoff, -01146.

 7           THE COURT:  Okay.  Got it.

 8           MR. BERGER:  And for those matters, we'd ask Your

 9   Honor to please adjourn those to the November 29 day, and

10   hopefully we'll have a more substantive update.

11           THE COURT:  Okay.  We'll do that.  And just please

12   file a notice of continuation of conference for that, or notice

13   of conference, however you want to do it.

14           Yeah, Mr. Bolton, go ahead.

15           MR. BOLTON:  Thank you, Your Honor.  David Bolton.  I

16   represent the estate in the two mentioned cases as well as

17   there's a third case, which I think was discussed before,

18   Valley.

19           The only thing I want to flag for the Court is we have

20   been discussing and trying to get to a real substantive

21   discussion on a global settlement.  There are several -- a

22   couple of these cases have had pre-trial orders entered in

23   them, and some of the dates are slipping by.  I just want to

24   alert counsel and the Court that we're going to need to pay

25   some attention to that, because we haven't really focused on
```

**KOSSOFF PLLC**

61

1   discovery.  The estate has a -- the estate of Kossoff has a

2   very limited asset pool, and every penny that gets spent on me

3   is a penny less to resolve.  So we've really --

4           THE COURT:  Right.

5           MR. BOLTON:  -- tried to husband those resources.

6           THE COURT:  That's great.  And when you refer to the

7   estate, you're referring to the estate of Phyllis Kossoff in

8   your case, right?

9           MR. BOLTON:  David Bolton.  Yes, Your Honor.  Thank

10  you.

11          THE COURT:  Okay.  So thank you for raising that.

12  Yeah, do try your best to just sort of keep pre-trial orders

13  and discovery schedule orders updated and adjourned as needed.

14  If there's somebody who messes up, I'll be probably okay with a

15  nunc pro tunc extension.  But try to stay on top of it and push

16  it out.  And as you achieve consent on such things, just submit

17  them, and I'll very likely approve them.  Okay.

18          MR. BOLTON:  Your Honor, we --

19          THE COURT:  Does that that cover you, Mr. Bolton?

20          MR. BOLTON:  David Bolton.  Yes, it does, Your Honor.

21  Thank you.

22          THE COURT:  Okay.  Great.  And now let's see.

23          MR. BERGER:  Your Honor --

24          THE COURT:  Back to the trustee.  Go ahead.

25          MR. BERGER:  Trying to get out of the way of the

**KOSSOFF PLLC**

62

1  balance of the calendar.  But yes, we'll send CMOs over to Mr.

2  Bolton.

3         And the last matter that Mr. Borriello would have

4  addressed is number 4, the Roc Le Triomphe, and Your Honor

5  already expressed your views in scheduling.  And so we've

6  addressed that as well.

7         THE COURT:  Okay.  Great.

8         MR. BERGER:  And with that, we move on to section

9  Roman numeral II, pre-trial conferences --

10         THE COURT:  Right.

11         MR. BERGER:  -- that my colleagues will address.

12         THE COURT:  Okay.  Thanks.

13         MR. BOLTON:  Your Honor, my cases are done.  May I be

14  excused?

15         THE COURT:  You may.  Yeah.  Go ahead --

16         MR. BOLTON:  David Bolton.

17         THE COURT:  -- Mr. Bolton.

18          Mr. Berger, you can too, although you tend to stick

19  around, which makes sense to me.  You're not obliged, but

20  you're welcome.  Okay?

21         MR. BERGER:  Thank you, Judge.

22         MR. RICHMOND:  Your Honor, Andrew Richmond.  May I

23  also be excused?

24         THE COURT:  Yes.

25         MR. RICHMOND:  I was in the Roc Le Triomphe case.

**KOSSOFF PLLC**

63

1             THE COURT:  Absolutely.

2             MR. RICHMOND:  Thank you, Your Honor.

3             THE COURT:  Thank you all.  Good to see you.

4             Okay.  So who's going to talk to me about Togut v.

5    Gatsby, 23-01078?

6             MR. HOWARD:  Good morning, Your Honor.  Ronald Howard

7    of Togut, Segal & Segal for the Chapter 7 trustee.

8             Your Honor, in this case, there are two named

9    defendants, Eric Gatsby and 133 Avenue D, LLC.  We've

10   discontinued this matter as to the claims against Mr. Gatsby

11   alone.  The complaint has been served against 133 Avenue D

12   twice, and still that defendant has not appeared in this case

13   or established any contact with our office.  Your Honor, at

14   this time, our next step will be to serve 133 Avenue D with a

15   default letter.

16            THE COURT:  Okay.  That's fine.  Let's put it down for

17   the next conference, the 29th.

18            Let me ask, though, does this case, analytically,

19   depend on the IRS as triggering creditor?

20            MR. HOWARD:  Your Honor, I don't think so.  But if

21   that's not the case, we'll get in contact with the Court.

22            THE COURT:  Yeah, just --

23            MR. BERGER:  This is a ninety-day preference matter.

24            THE COURT:  Okay.  So that's great.  Yeah, just

25   generally, I always get skittish about default motions,

**KOSSOFF PLLC**

64

1   particularly if I see a substantive deficiency or potential

2   substantive deficiency.  But it sounds like, in this case,

3   that's the way to go.

4         MR. HOWARD:  Thank you, Your Honor.  The next matter

5   is Togut v. Savoysky-Smith, which is also another ninety-day

6   preference matter.  Your Honor, in this case, we most recently

7   served the complaint on the defendant on June 28th, and

8   defendant has not appeared in this case.

9         On September 13th, we served the defendant with a

10  default letter to which we received no response.  Neither the

11  complaint nor the default letter was returned as undeliverable.

12  And we will be moving forward to seek entry of a default in

13  this case.

14        THE COURT:  Okay.  Have you had any communication that

15  gives you confidence you've got the right location for the

16  defendant?

17        MR. HOWARD:  Your Honor, we haven't any telephonic

18  communication.  We know that the complaint and the default

19  letter were served and neither was returned as undeliverable by

20  the post office.

21        THE COURT:  Okay.  Okay.  The course of action you

22  describe sounds fine.  I would just ask you to take a little --

23  put in a teeny bit of effort to see if you can find the

24  defendant.  It's a one-defendant case?

25        MR. HOWARD:  That's correct.

**KOSSOFF PLLC**

65

1          THE COURT:  Yeah.  I mean, if you haven't, just back

2    your efforts, besides formal service, with a little Googling or

3    whatever it is you do to see if you can find humans.  Okay?

4          MR. BOLTON:  Yes, Your Honor.  Your Honor, I

5    believe --

6          THE COURT:  Oh, that's it for the -- look at that;

7    that's it for your agenda.  Let me cross-reference to my

8    calendar to see if I'm expecting anything to be addressed that

9    hasn't already been done.

10          Okay.  I believe -- thank you for bearing with me --

11    that we have covered everything on both your agenda and my

12    calendar.

13          Does anyone want to raise anything else?

14          No?  Okay.  I heard nothing.  Thank you all for your

15    efforts.  And so I will, I guess, keep an eye on the docket and

16    see if anything comes in.  And if not, if I don't talk to you

17    before, I will certainly see you on the 29th, and any earlier

18    date that may be agreed to, on argument on the Roc Le Triomphe

19    motion.  Okay?  We're covered?

20          Thanks very much.  And take care and be well.

21          MS. NESTER:  Thank you, Your Honor.

22          THE COURT:  We're adjourned.

23        (Whereupon these proceedings were concluded at 1:24 AM)

24

25

66

1

2                         C E R T I F I C A T I O N

3

4     I, Sharona Shapiro, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7

8     _Sharona Shapiro_

9     _____

10    Sharona Shapiro (CET-492)

11    AAERT Certified Electronic Transcriber

12

13    eScribers

14    7227 North 16th Street, Suite #207

15    Phoenix, AZ 85020

16

17    Date:  October 26, 2023

18

19

20

21

22

23

24

25

**#**

**#207 (1)**
5:22

**A**

**aback (1)**
49:22
**abeyance (3)**
14:7;28:12;55:17
**ability (4)**
17:19;48:7;51:8,9
**able (7)**
11:8;16:16;18:7;
24:25;33:1;34:3,6
**absent (1)**
40:2
**Absolutely (3)**
41:10;56:20;63:1
**acceptable (1)**
56:20
**accomplish (1)**
8:11
**accordingly (1)**
40:16
**account (1)**
23:17
**accurate (1)**
44:25
**accurately (1)**
33:14
**ACH (1)**
7:13
**achieve (5)**
10:23;33:24,25;
59:24;61:16
**achieved (1)**
39:4
**achieving (1)**
24:19
**acknowledged (1)**
23:10
**Action (8)**
4:11;10:21;19:8;
22:3,14,15;48:17;
64:21
**actions (1)**
11:6
**actually (3)**
36:19;48:2;54:20
**add (7)**
23:19;25:5,6;27:2,
17,18;51:23
**additional (7)**
14:23;37:19;45:21,
22;46:3,16;48:6
**address (7)**
10:5,10;27:15;
43:16;57:18;59:9;
62:11
**addressed (4)**

36:16;62:4,6;65:8
**addressing (1)**
13:14
**adduced (1)**
22:1
**adjourn (2)**
38:6;60:9
**adjourned (2)**
61:13;65:22
**adjusted (1)**
55:9
**administration (1)**
60:1
**administrative (2)**
15:16;56:19
**Adv (1)**
3:5
**adversaries (11)**
8:3;12:14;13:20;
19:22;28:24;29:8,15;
32:13;33:11;42:11;
44:2
**Adversary (32)**
4:2,7,14,19;5:2,8,
13;8:14,15,19,20;9:2,
7,24;10:7,9,10,21;
11:25;12:4;13:6;
23:21;24:9;28:10;
29:3,5;32:11;41:2;
42:15,16;44:13;59:9
**adversary-by-adversary (1)**
33:22
**advisory (1)**
15:3
**affect (3)**
10:8;23:25;52:9
**affected (2)**
13:6;47:18
**affecting (1)**
18:15
**affects (1)**
28:10
**aftermath (1)**
26:9
**again (8)**
11:11;21:12;24:22;
26:20;33:13,13;
34:24;43:19
**against (8)**
9:7;11:24;16:11;
25:22;42:15;47:10;
63:10,11
**agenda (5)**
8:6;43:16;58:20;
65:7,11
**ago (1)**
16:20
**agree (3)**
13:4;41:21;47:3
**agreed (1)**
65:18
**agreement (4)**
40:2;42:18,18;

59:22
**ahead (11)**
17:17;27:5;31:11;
41:20;52:24;53:23;
54:25;56:16;60:14;
61:24;62:15
**AL (6)**
3:7;4:4,21;5:4,10;
42:22
**ALBERT (8)**
3:3;4:2,7,14,19;5:2,
8,13
**alert (1)**
60:24
**allegations (1)**
21:14
**alleged (2)**
22:7,16
**allow (8)**
12:16,24;16:18;
19:13;21:8;22:8;49:4;
50:10
**allowance (3)**
11:22;13:13,13
**allowed (2)**
16:6,11
**allowing (2)**
25:3;50:17
**alluded (1)**
24:2
**alone (4)**
18:7;26:15;47:16;
63:11
**along (1)**
14:15
**alters (1)**
25:14
**although (3)**
10:12;30:14;62:18
**always (3)**
35:20;50:8;63:25
**amend (5)**
21:22;22:21;23:8,
11;24:7
**Amended (18)**
4:23;5:6;11:22;
12:17,20,25;15:11,17,
19,20,21;16:12;
22:20;26:19;45:6,9,
17;55:2
**amendment (3)**
24:12;38:5,15
**amendments (2)**
38:12,20
**amends (1)**
31:19
**among (3)**
11:7;41:13;47:5
**amount (3)**
16:2,6,8
**amounts (1)**
16:14
**analytically (1)**

63:18
**and/or (1)**
9:19
**Andrew (2)**
36:5;62:22
**annexed (1)**
15:17
**anticipation (1)**
46:6
**appeal (1)**
25:17
**appearances (1)**
8:9
**appeared (2)**
63:12;64:8
**application (1)**
32:13
**appreciate (11)**
17:9;23:4,12;31:7;
33:18,18;35:14,14;
40:25;56:10;59:23
**approach (2)**
30:12;57:25
**approaching (1)**
59:18
**appropriate (11)**
11:20;12:24;13:4;
19:8,9;23:14;28:18;
32:7;33:11;45:23;
52:8
**approval (2)**
32:24;42:20
**approve (1)**
61:17
**area (1)**
31:4
**argue (2)**
23:13;27:14
**arguing (3)**
27:3;39:11,11
**argument (11)**
9:12;10:12;33:7;
36:14;37:3,4;40:5;
41:8,22;49:13;65:18
**arguments (10)**
9:9;17:20;18:6;
22:22;24:5;27:13;
28:15;36:9;41:18;
49:18
**arise (1)**
14:24
**arising (1)**
8:3
**around (2)**
58:17;62:19
**arranged (1)**
34:24
**articulated (1)**
35:18
**articulating (1)**
23:6
**aside (1)**
21:1

**aspects (3)**
16:24;34:11;42:22
**aspiration (1)**
34:8
**asserted (2)**
10:21;16:2
**assess (1)**
52:23
**assessment (3)**
21:10,17,18
**asset (1)**
61:2
**Associates (2)**
5:4;9:7
**assuming (2)**
39:20;55:8
**assurance (1)**
42:4
**attach (2)**
56:24;57:5
**attaching (1)**
60:3
**attempt (3)**
22:13;24:9;45:15
**attend (1)**
41:7
**attendance (1)**
41:11
**attention (1)**
60:25
**Attorneys (2)**
7:3,12
**Attorney's (4)**
12:8,23;30:14,18
**authoritatively (1)**
34:20
**authority (3)**
28:3;31:4;51:24
**authorize (2)**
28:22;29:1
**available (5)**
16:25;33:8;39:21,
23;49:18
**Avenue (3)**
63:9,11,14
**avoid (2)**
8:21;53:21
**aware (4)**
9:24;43:24;44:24;
45:2
**away (2)**
32:14;52:20
**AZ (1)**
5:23

**B**

**back (18)**
10:23;28:24;29:20,
22;30:8;31:14;36:9,
13,24;38:9;39:10;
42:11;50:16;57:20;
59:1,6;61:24;65:1

**backdrop (1)**
32:12
**balance (4)**
58:20;59:7,9;62:1
**ball (1)**
35:9
**Bank (3)**
42:16;44:14;57:19
**Bankruptcy (9)**
3:17,25;8:4;21:6,
13;25:9;26:12;28:10;
31:1
**bar (1)**
51:24
**Barnea (1)**
31:2
**B-A-R-N-E-A (1)**
31:2
**barring (1)**
55:19
**based (8)**
20:22;21:18;22:7,
16;38:16;46:23;49:4,
11
**basically (12)**
18:2;21:8;22:2,8,
13,25;25:1,14;26:16;
49:23;50:3,10
**basis (8)**
12:1;21:4,16;22:17;
25:8;26:3;45:18;
56:22
**baton (2)**
42:14;43:15
**bearing (2)**
51:21;65:10
**beautifully (1)**
12:11
**becoming (1)**
26:11
**behalf (1)**
36:6
**believes (2)**
28:13;33:11
**beneficial (1)**
23:25
**Berger (79)**
10:1,1;11:1;12:10,
15,19,21;13:3,10,22;
14:11,19;15:6,13,15,
19;16:9,18;17:1;19:6;
20:9,11;21:14;25:14;
26:16;27:2,5,6;29:13;
30:8,11,19,24;31:7,
12,14;33:13,15;34:2,
6,15,18;35:11,13,22;
37:23;38:1;41:16,20,
21;42:13,24;43:5,7,
12,14;53:17,19,23;
54:9;56:16,17,18;
57:3,6,12;58:4,9,19;
59:8;60:5,8;61:23,25;
62:8,11,18,21;63:23

**Berger's (1)**
58:11
**besides (2)**
14:17;65:2
**best (6)**
13:15;32:8,10,13;
48:14;61:12
**better (3)**
24:11;27:8;35:12
**beyond (1)**
22:17
**binding (1)**
48:4
**Birmingham (1)**
7:16
**bit (5)**
8:10;40:11;48:13;
57:19;64:23
**bog (1)**
49:16
**boils (1)**
24:3
**BOLTON (22)**
7:2,8;29:17,18,18;
59:19;60:14,15,15;
61:5,9,9,18,19,20,20;
62:2,13,16,16,17;65:4
**Bolton's (1)**
59:23
**bolts (1)**
30:12
**bona (1)**
16:7
**books (1)**
11:8
**Borriello (3)**
10:3;59:10;62:3
**both (7)**
8:5;28:18;29:3;
39:1,2;49:4;65:11
**bottom (2)**
40:13;51:16
**bound (1)**
38:19
**Bowling (1)**
3:18
**break (1)**
33:23
**brewing (1)**
53:21
**brief (2)**
32:23;57:9
**briefed (1)**
9:10
**briefing (13)**
8:17;14:8;19:20;
20:6;27:1;31:24;
32:19,20,21;33:6;
35:8;54:23;56:3
**briefly (1)**
28:12
**briefs (2)**
8:22;9:8

**bring (2)**
11:20;28:13
**bringing (1)**
26:20
**brings (1)**
45:11
**broad (1)**
49:16
**brought (3)**
10:18;11:10;44:19
**burdensome (1)**
50:21
**bureaucratic (1)**
30:9
**business (1)**
42:1

**C**

**calculations (1)**
16:15
**calendar (11)**
8:3,6;9:25;10:11;
34:16,19;42:12;
43:25;62:1;65:8,12
**call (3)**
8:9;18:2;53:8
**calls (1)**
47:12
**can (46)**
9:13;12:5,5,10,23;
13:12,15;14:11;15:8,
24;17:16;21:3;22:20;
23:17;25:16;26:3,5;
27:7;29:7;30:8,9,12;
32:2;35:6;38:16;40:2,
9;41:7,12,12,14,23;
42:5;43:16;47:21;
51:16;52:23;55:3,17;
57:15;58:17,20;59:9;
62:18;64:23;65:3
**capable (2)**
55:6,14
**CAPACITY (8)**
3:3;4:3,8,15,20;5:3,
9,14
**Capital (1)**
7:13
**care (5)**
21:23,23,25;52:1;
65:20
**Case (56)**
4:5,11,22;5:5;8:4,
17,20,25;9:4;11:2,23;
12:3,14;13:5;14:16;
19:17;26:10,24;27:3;
28:2,9,10;29:9;31:23;
32:6;36:15;37:21;
42:22;43:11;44:1,5;
46:5,22;47:4,10,23;
48:9,12,17,21,24;
57:10,21;60:3,17;
61:8;62:25;63:8,12,

18,21;64:2,6,8,13,24
**cases (13)**
8:9;17:10;23:25;
24:1,20;26:6,8;43:22;
46:19;51:2;60:16,22;
62:13
**case-specific (1)**
20:6
**Cashman (1)**
36:6
**cast (2)**
26:2,2
**catching (1)**
48:23
**Cause (3)**
4:11;14:14;22:3
**causes (5)**
10:20;11:6;18:16;
22:14,15
**cavil (1)**
22:17
**centralized (2)**
23:23;33:24
**certain (5)**
10:23;19:16;21:11;
25:7;44:18
**Certainly (9)**
11:12;14:8;17:12,
16;19:9;34:23;37:5;
43:2;65:17
**certainty (1)**
28:14
**certificate (1)**
21:19
**cetera (1)**
20:2
**challenge (2)**
20:2,4
**chambers (7)**
12:12;40:4,8,15,21;
44:19;45:5
**chance (1)**
14:15
**change (4)**
21:20,22;22:19;
45:8
**changed (1)**
54:19
**changes (1)**
25:14
**changing (1)**
20:21
**CHAPTER (9)**
3:4;4:3,8,15,20;5:3,
9,14;63:7
**characterization (1)**
50:17
**characterize (1)**
20:9
**chase (1)**
28:8
**check (1)**
18:17

**chief (1)**
30:23
**chiefly (1)**
17:21
**choose (1)**
42:1
**circumstances (1)**
44:24
**circus (1)**
22:24
**City (1)**
7:6
**civil (1)**
30:23
**claim (67)**
10:5,14,20;11:3,7,
16,17,23,24;12:1,5,7,
17,17,25;13:1,11,13,
15,17,20;15:4,11,17,
20,20,24;16:5,11,12,
19,23;17:12;19:15,16,
25;20:4,20,24;21:1,3,
4,16,22,24;22:20;
23:17,22,24;24:14;
25:22,22;26:3,4,5;
28:15;31:19;32:25;
33:2,2,3,24;36:21;
37:5,11;38:12;55:13
**claims (4)**
10:17;59:25;60:1;
63:10
**clarification (1)**
52:18
**clarify (1)**
51:5
**clarity (4)**
20:7;28:14;37:19;
38:25
**clawback (1)**
10:23
**clean (2)**
17:11;20:15
**cleaner (1)**
19:23
**clear (5)**
17:11;30:15;40:3,
11,18
**clearly (1)**
12:11
**closely (1)**
38:11
**CMO (2)**
45:9,17
**CMOs (1)**
62:1
**Co (1)**
9:8
**cochiefs (1)**
31:1
**Code (2)**
11:12;26:8
**colleague (2)**
39:18;59:10

**colleagues (6)**
10:2,10;42:14,17;
43:15;62:11
**combined (1)**
20:15
**coming (4)**
23:23;27:25;38:5;
41:24
**comment (1)**
20:2
**communicate (5)**
39:20;40:13;57:15;
58:10,18
**communicating (1)**
31:6
**communication (6)**
18:1,14;35:4;52:25;
64:14,18
**communications (1)**
11:16
**complaint (15)**
10:22;11:25;20:24;
21:15,16;22:1,14,17,
21;38:5,20;63:11;
64:7,11,18
**complaints (2)**
11:9;25:11
**complete (1)**
47:13
**completed (1)**
52:14
**completely (1)**
12:11
**compliance (2)**
51:25;55:24
**compromise (1)**
16:2
**conceive (1)**
50:20
**concern (2)**
33:18;55:24
**concerning (4)**
10:6;11:16;19:15;
23:24
**concerns (1)**
16:2
**conclude (2)**
28:18;37:1
**concluded (1)**
65:23
**conclusion (1)**
51:13
**concretize (1)**
30:9
**conducting (1)**
59:13
**Conference (20)**
4:5,10,17,22;5:5,11,
16;26:24;27:4;28:9;
34:13,24;43:11;45:9;
51:6;52:1,5;60:12,13;
63:17
**conferences (1)**

62:9
**confidence (1)**
64:15
**confirm (1)**
40:15
**confirmed (1)**
19:2
**confusion (2)**
15:16;56:20
**connection (2)**
48:6;54:5
**consent (1)**
61:16
**consequences (1)**
56:8
**consider (5)**
24:11;32:13;50:20;
51:11,18
**consideration (1)**
32:2
**considered (1)**
14:15
**consistent (4)**
24:14,17;28:18;
31:24
**construe (2)**
31:21,22
**contact (7)**
14:21;30:17,21;
40:4,7;63:13,21
**contemplated (2)**
32:23;54:16
**contemplates (1)**
32:24
**contemplation (1)**
33:14
**contentions (4)**
28:15,17;33:21;
44:18
**contesting (1)**
26:16
**continuation (1)**
60:12
**continue (1)**
19:24
**continued (3)**
34:12;43:10;50:16
**control (3)**
30:13;34:11;51:10
**convinced (1)**
11:17
**copies (1)**
19:2
**copy (2)**
17:22;27:21
**cost (1)**
24:19
**cost-effective (3)**
28:20;32:8;33:25
**counsel (6)**
25:2;38:3,17;44:11;
45:3;60:24
**Country (1)**

7:4
**counts (1)**
16:7
**couple (3)**
9:10;18:12;60:22
**course (5)**
8:23;11:2;19:8,10;
64:21
**Court (170)**
3:17;8:2,6;10:24;
12:10,18,20;13:2,4,9,
18;14:10,13,23;15:5,
8,14,18;16:1,17,21;
17:3,6;18:4,9,11,13,
19,25;20:12,15,18;
21:18;22:8,11;23:4,6;
24:16;25:5,19;26:6,
14,21;27:17,19,22;
28:2,6;29:10,25;
30:17,22,25;31:10,13,
21;32:4,17,22;33:16;
34:9,16,20;35:17,25;
36:4,10,13,17,22;
37:20,22;38:9,21;
39:14,22,25;40:20;
41:1,5,10,19,23;
42:21;43:1,6,8,13,17,
21,23;44:6,16,19,22;
45:24;46:9,11,18,21;
47:1,3,9;48:10,13,20;
50:2,6,12,14;51:5,24;
52:15,17,19;53:12,18,
20,25;54:2,6,13,25;
55:5,7,10,15,18,23;
56:11,15;57:1,4,7;
58:1,5,8,10,16,21;
59:2,5;60:2,7,11,19,
24;61:4,6,11,19,22,
24;62:7,10,12,15,17,
24;63:1,3,16,21,22,
24;64:14,21;65:1,6,22
**courtesy (5)**
17:24;25:2,16,20;
48:11
**courtroom (2)**
41:13;42:8
**Court's (2)**
51:6;56:4
**cover (4)**
9:3;40:23;56:13;
61:19
**covered (6)**
53:1,3;56:11;59:21;
65:11,19
**credit (1)**
23:2
**creditor (11)**
21:4,7,7,12,12;22:3,
18;25:24;26:4,13;
63:19
**critical (1)**
12:12
**cross-reference (1)**

65:7
**curious (1)**
36:8
**current (1)**
59:20
**currently (1)**
30:19
**cut (4)**
28:8;31:5;36:20;
50:2

**D**

**dark (1)**
48:14
**darker (1)**
57:20
**date (18)**
25:10;27:7,11;
34:13;39:12;40:5,7,8,
20;42:2,6;43:3;47:12;
48:6;55:3;56:4;57:10;
65:18
**dated (2)**
21:17;46:14
**dates (3)**
27:9;47:16;60:23
**DAVID (8)**
3:24;7:2,8;29:18;
60:15;61:9,20;62:16
**day (11)**
9:15,19;14:21;15:9;
18:24;25:8,10;45:7,8,
10;60:9
**days (3)**
46:16;47:14;53:10
**de (4)**
16:13,16;21:11;
22:13
**deadline (12)**
45:13,16,19,20;
51:14,15;55:4,9,10,
24;56:3;57:9
**deadlines (1)**
47:17
**deal (1)**
14:23
**dealing (1)**
19:23
**debtor's (1)**
11:8
**decedent (2)**
59:15,17
**December (1)**
46:18
**decide (1)**
38:23
**decided (1)**
20:25
**decision (12)**
17:22;18:6,15;
24:25;25:15,25;
26:19,19;27:20;54:4,

10:56:4
**declaration (1)**
15:22
**deem (1)**
25:17
**deemed (1)**
11:13
**deeming (2)**
50:18,23
**default (6)**
63:15,25;64:10,11,
12,18
**defend (2)**
12:7;13:11
**defendant (7)**
29:12;63:12;64:7,8,
9,16,24
**Defendants (13)**
3:8;15:3;28:23;
29:15;30:6;42:21,25;
49:1;59:12,13,21,21;
63:9
**defendant's (1)**
23:19
**defense (1)**
23:19
**defenses (4)**
10:17;24:5;31:25;
33:20
**deficiency (2)**
64:1,2
**defined (1)**
21:13
**definitely (1)**
42:5
**delay (1)**
27:23
**demand (2)**
44:4;49:23
**demanded (1)**
50:9
**demands (1)**
46:5;50:1
**demonstrates (1)**
22:2
**depend (1)**
63:19
**depends (2)**
15:10;51:20
**deprived (1)**
26:23
**deputy (4)**
18:22;19:1,3;34:21
**describe (1)**
64:22
**described (1)**
32:23
**describing (2)**
27:1;33:14
**designated (3)**
25:8;27:11;59:16
**desire (2)**
9:1;53:2

**desired (1)**
23:18
**desires (1)**
35:7
**desperation (1)**
22:6
**determination (2)**
33:22,24
**determined (1)**
57:11
**develop (1)**
53:15
**different (3)**
11:9;20:17;23:1
**difficulties (1)**
35:4
**digest (1)**
18:7
**direct (2)**
35:19;48:25
**directing (1)**
18:19
**directly (4)**
23:25;31:5;37:4;
58:18
**disagree (4)**
20:14,16;27:12;
50:16
**disallowed (1)**
11:13
**discontinued (1)**
63:10
**discovery (37)**
9:1;14:22;16:24;
33:1,8;35:7;37:16,17;
44:5;45:4,12,21,22;
46:5,24;47:6,17,24;
48:18,22;49:23;50:1;
51:13,15,15,19,21;
52:8,9,10,13,22,23;
57:22;59:13;61:1,13
**discretion (4)**
23:6;31:23;32:6;
35:14
**discuss (1)**
52:5
**discussed (4)**
27:6,20;54:12;
60:17
**discussing (2)**
56:23;60:20
**discussion (4)**
35:6;53:3;57:8;
60:21
**Dismiss (3)**
4:10;23:7;54:10
**dismissal (7)**
8:19;22:21;23:7;
24:8,10;53:3;54:8
**dismissed (3)**
22:14,16;23:3
**dispatch (1)**
29:6

**dispelled (1)**
37:3
**disposal (1)**
37:6
**disposition (1)**
32:9
**dispositive (6)**
19:14,14;23:10,18;
41:22;54:16
**dispute (1)**
52:21
**disputes (1)**
35:7
**distill (3)**
15:8;54:14;56:22
**docket (2)**
8:4;65:15
**docketed (2)**
44:13;57:2
**docketing (1)**
12:14
**doctrine (1)**
22:9
**doctrines (2)**
20:22;23:13
**document (9)**
44:4;46:16;47:13;
48:23;49:7,22;50:1;
57:16;58:12
**documentary (1)**
48:8
**documents (7)**
48:7;50:9;57:16,20;
58:2,6,15
**done (7)**
24:4,10,24;47:7;
54:17;62:13;65:9
**double (1)**
18:17
**dovetail (1)**
14:17
**down (8)**
24:3,13;32:12;
34:12;44:7;49:16;
58:23;63:16
**drawn (1)**
18:2
**drew (1)**
11:4
**dual (1)**
38:7
**due (3)**
16:2;35:5;45:20
**during (1)**
27:7

**E**

**eagerness (1)**
33:18
**earlier (8)**
35:2,18;39:11;40:4,
4,7;53:4;65:17

**ease (1)**
56:19
**easier (1)**
53:18
**easy (2)**
58:13,13
**economy (2)**
28:19;32:1
**effect (4)**
14:17;24:2,6;36:19
**effectively (2)**
24:19;28:9
**efficiency (1)**
24:17
**efficient (1)**
59:25
**effort (2)**
37:11;64:23
**efforts (2)**
65:2,15
**either (5)**
15:11;40:9,13;
41:14;42:7
**eleven (1)**
47:14
**eliminate (1)**
10:20
**eliminated (1)**
14:11
**else (6)**
8:24;21:21;28:23;
29:14;53:6;65:13
**email (9)**
17:25;25:3,12;
39:20;42:6;45:3,6;
48:9;53:15
**emphasize (1)**
34:10;53:7
**end (5)**
40:3;44:5;51:19;
52:8,10
**endeavor (1)**
44:25
**ends (1)**
37:11
**engaged (2)**
11:15;30:14
**enough (2)**
9:13;37:1
**ensure (1)**
18:21
**enter (4)**
18:19;19:2;41:6,7
**entered (9)**
27:20;45:7,8,10,17;
47:4,10;57:4;60:22
**entertain (4)**
49:9;51:13;52:5,8
**enthusiasm (1)**
17:14
**entire (2)**
15:24;22:13
**entirely (1)**

**ease (1)**
20:5
**entirety (1)**
37:5
**entry (1)**
64:12
**envision (1)**
15:20
**Eprodigy (1)**
7:12
**Eric (1)**
63:9
**error (1)**
18:18
**escape (1)**
22:25
**eScribers (1)**
5:21
**especially (1)**
44:6
**ESQ (2)**
7:8,18
**essentially (1)**
25:7
**establish (1)**
16:22
**established (3)**
22:4;54:8;63:13
**Estate (17)**
7:3;11:24;14:2;
16:3,7,12;25:23;
29:19;31:18;59:15,
17;60:1,16;61:1,1,7,7
**estoppel (5)**
20:23;22:10,22;
23:12;24:6
**ET (7)**
3:7;4:4,21;5:4,10;
20:2;42:21
**even (8)**
17:22;18:7;21:10;
25:2;34:20;39:6;
45:17;47:7
**evening (1)**
27:21
**event (1)**
39:19
**events (1)**
14:14
**everybody (2)**
8:24;53:8
**everyone (4)**
8:2;12:3;13:5,5
**evidence (1)**
15:23
**exact (2)**
33:4;46:8
**exactly (1)**
12:14
**example (1)**
57:19
**except (1)**
57:1
**excessively (1)**

**49:16**
**excuse (1)**
20:4
**excused (1)**
62:14,23
**exercise (1)**
31:23
**exhibit (1)**
15:17
**exist (1)**
35:8
**existed (1)**
47:17
**existing (1)**
9:15
**exists (1)**
22:10
**expecting (1)**
65:8
**expedited (1)**
56:21
**expenditure (1)**
14:9
**expert (5)**
51:15,19,21;52:9,
10
**expired (1)**
45:16
**explain (4)**
19:1;45:25;47:21;
54:14
**explained (1)**
19:4
**explaining (1)**
45:18
**explicit (1)**
30:1
**Express (3)**
35:24;49:6,8
**expressed (2)**
51:1;62:5
**extend (8)**
44:4;45:13,15,15,
18;48:6;49:22,25
**extended (4)**
12:1;46:24;56:4;
57:10
**extension (4)**
46:2;47:7;50:8;
61:15
**extensions (2)**
45:4,12
**extent (7)**
23:16;35:15;38:4;
45:2;48:22;49:2;
54:15
**eye (2)**
53:16;65:15

**F**

**face (1)**
38:23

**facilitates (1)**
41:11
**facility (1)**
58:25
**fact (18)**
21:1;22:5,19;24:24;
26:7,17,18;44:4;46:4;
47:25;50:10;51:14,
19;52:8,10,13,21;54:9
**fact-driven (1)**
51:20
**facto (1)**
21:11
**factor (1)**
50:20
**facts (10)**
21:25;22:4,6,7,16,
19;23:24;26:15;
27:18;52:22
**factual (3)**
13:12;27:13;32:12
**failed (1)**
22:2
**fails (1)**
23:6
**Failure (1)**
4:11
**fair (4)**
28:20;29:25;32:8;
33:25
**fairly (2)**
20:9;21:15
**family (2)**
59:19,20
**far (2)**
32:14;52:20
**fault (1)**
12:11
**Federal (1)**
35:24
**feel (1)**
41:24
**fide (1)**
16:7
**figure (1)**
27:7
**figuring (1)**
26:25
**file (22)**
8:22;9:1;11:23,24;
15:16;16:15;19:14,
24;27:16;34:3,7;35:2,
4;40:18,21;51:4,8;
53:2;54:16,21;57:9;
60:12
**Filed (10)**
4:10;15:11,21;
16:12;18:16;26:9,11;
31:17;32:23;33:6
**files (3)**
21:5;22:19;28:13
**filing (13)**
12:13;15:2,9,11,19;

26:12;27:2;35:9;51:2,
7,25;52:2;55:19
**finally (3)**
9:6;19:11;20:21
**Financial (1)**
7:12
**find (5)**
9:17;31:3;43:23;
64:23;65:3
**fine (7)**
35:13;37:22;44:6;
52:20;57:1;63:16;
64:22
**finish (1)**
32:5
**firm (1)**
40:20
**first (14)**
10:4;11:5;17:4,7,9;
24:14;27:19;30:11;
32:22;33:24;45:15;
46:12;48:16;50:15
**firsthand (1)**
13:24
**five (3)**
30:1;46:15;53:10
**flag (1)**
60:19
**flat- (1)**
16:22
**focused (1)**
60:25
**Fogelman (1)**
31:2
**fold (1)**
49:6
**folding (1)**
9:14
**followed (1)**
60:2
**following (2)**
40:10;53:16
**foreshadowing (1)**
52:6
**form (1)**
22:17
**formal (3)**
8:8;24:23;65:2
**format (2)**
42:3,6
**formed (1)**
47:20
**formulating (1)**
11:5
**formulation (1)**
25:25
**forth (4)**
23:10;50:16;56:1,3
**forum (1)**
27:14
**forward (9)**
15:6;19:10;36:2;
37:16,17,24;49:11;

50:25;64:12
**fractured (1)**
33:23
**framework (1)**
36:1
**free (3)**
21:21;23:13;58:23
**front (7)**
12:7,8;13:10,16;
18:18;24:11;49:15
**front-load (1)**
23:16
**fully (3)**
9:10;47:20;49:15
**fun (1)**
41:24
**further (4)**
34:12;37:11;45:12;
54:23

**G**

**Garden (1)**
7:6
**gather (1)**
15:24
**Gatsby (4)**
5:10;63:5,9,10
**general (1)**
9:23
**generally (4)**
10:5;13:22;14:4;
63:25
**gets (2)**
14:15;61:2
**given (7)**
21:17;25:2,20;42:5;
48:11;49:1,25
**gives (2)**
36:1;64:15
**global (3)**
59:18,24;60:21
**Good (16)**
8:2,20;10:1;17:13;
19:3;31:3;34:22;36:5;
37:23;38:2;43:12;
44:10;58:1,9;63:3,6
**Googling (1)**
65:2
**gosh (1)**
40:3
**government (1)**
31:3
**grant (3)**
23:7;46:7;50:7
**granted (7)**
8:15;14:4;46:7,23;
49:24;51:17;54:14
**granting (4)**
19:12;46:6;50:11,
18
**granular (1)**
42:11

**Great (12)**
20:12;35:2,25;43:1,
13,17;56:15;58:21;
61:6,22;62:7;63:24
**Green (1)**
3:18
**grips (1)**
23:24
**guard (2)**
18:3;28:5
**guess (11)**
15:10;16:5;25:12;
36:11;37:14,15;40:8;
48:7;49:4,7;65:15

**H**

**habit (1)**
53:15
**Hampton (3)**
9:7;36:6;45:9
**hand (1)**
53:23
**handle (1)**
32:14
**handling (2)**
36:24;37:24
**hang (13)**
18:25,25;20:8;
24:16,16;31:10,10,10;
32:4;46:11,11;55:7;
56:9
**happened (2)**
18:17;33:6
**happening (2)**
12:5;34:4
**happy (1)**
56:19
**harder (2)**
39:6,7
**harm (1)**
14:25
**hate (1)**
57:20
**head-on (1)**
36:16
**hear (11)**
9:11,12;14:16;
17:13;23:4;24:4;29:2;
31:13;40:1,16;44:8
**heard (11)**
13:17;14:23;15:12;
29:14,16;30:6;33:19;
37:7;43:25;56:16;
65:14
**hearing (20)**
8:24;17:23,25;
18:20,24;19:4;25:1,3;
26:18;27:7,7,8,9,11;
28:22;38:24;40:19,
21;43:3;58:19
**heartburn (1)**
53:22

**held (1)**
28:12
**helpful (4)**
19:8,9;37:18;40:22
**hereby (2)**
56:4;57:10
**here's (4)**
34:9;47:19;48:15;
55:18
**himself (1)**
22:5
**hold (5)**
14:7;28:4;29:3;
34:15;55:17
**holding (1)**
20:5
**holds (1)**
54:20
**holiday (1)**
40:12
**HON (1)**
3:24
**Honor (83)**
10:4,14,16,18;
11:14,20;12:3,7,9,15;
13:3,10,12,14,16,23;
23:14:3,4,7,19,24;
15:1;16:9;17:1,5,19;
24:15,25;25:21;27:6;
28:4,5;29:18;31:8,12;
32:19;34:18;35:13;
36:3;38:2,18;39:13,
23;40:17;41:9;42:13,
17;43:14,18;44:13,10,
23;46:6,7;49:21;50:4;
55:22;56:10,19,21;
59:3,8;60:9,15;61:9,
18,20,23;62:4,13,22;
63:2,6,8,13,20;64:4,6,
17;65:4,4,21
**Honor's (4)**
10:11;35:14;43:15;
56:24
**hope (3)**
13:3;34:6;59:24
**hopeful (1)**
16:10
**hopefully (4)**
15:1;27:16;59:14;
60:10
**hoping (1)**
16:3
**horizon (1)**
57:14
**hour (2)**
16:19;56:23
**Howard (8)**
10:3;59:9;63:6,6,
20;64:4,17,25
**humans (1)**
65:3
**husband (1)**
61:5

**hybrid (1)**
41:12

## I

**idea (2)**
17:13;47:20
**ideas (2)**
8:21;35:12
**II (1)**
62:9
**immediately (1)**
39:9
**impact (3)**
13:19,22;55:13
**impair (1)**
14:20
**impermissibly (1)**
20:22
**implementing (1)**
56:1
**implications (1)**
29:8
**importantly (1)**
51:9
**improperly (1)**
14:20
**inappropriate (1)**
49:17
**incapable (1)**
45:19
**incarceration (1)**
45:20
**include (1)**
28:16
**includes (2)**
29:9;33:21
**including (7)**
20:1;24:6;27:1;
29:4,9;44:18;56:3
**incorporate (1)**
56:23
**indeed (1)**
30:2
**independent (1)**
37:10
**indicated (4)**
20:23;21:16,17;
26:6
**indirect (2)**
24:2;31:6
**INDIVIDUALLY (8)**
3:3;4:3,8,15,20;5:3,
9,14
**inefficient (1)**
24:11
**inferring (1)**
43:1
**initial (2)**
32:23;47:24
**inquiry (2)**
18:13;49:16
**insofar (1)**

19:13
**instance (1)**
15:1
**Instead (1)**
45:20
**intend (2)**
14:16,19
**intended (2)**
23:19;29:4
**intention (2)**
28:25;30:3
**interested (2)**
8:20;16:21
**interesting (1)**
54:20
**interfere (1)**
14:14
**INTERIM (8)**
3:4;4:3,8,15,20;5:3,
9,14
**Internal (9)**
10:19;11:15,21,22;
12:1,6,16,25;26:8
**interrupt (1)**
24:16;32:4,5;43:19
**interrupted (1)**
32:6
**interrupting (1)**
47:3
**intervene (3)**
8:16;10:6;19:13
**intervening (1)**
8:18
**Intervention (9)**
4:12;10:7;14:3,6;
20:6;23:9;29:4;53:2;
54:15
**interventions (1)**
14:6
**into (14)**
9:14;10:19;11:4,10;
16:24;17:10;18:2;
23:17;25:16,23;
26:10,12;42:7;49:6
**introductory (1)**
19:21
**invalidity (1)**
16:23
**invest (1)**
37:11
**invite (1)**
8:11
**invocation (1)**
23:12
**involve (1)**
43:22
**involving (1)**
25:8
**IRS (59)**
10:5,14,22;12:18,
20;13:10,20;15:10,15,
23;16:4,14,23;17:12;
19:15,16,23,25;20:1,

20;21:1,5,10,16,21,
24;22:3,18,19;23:2,
17,22,24;24:13;
25:21;26:2,9;28:14;
29:6;30:15,19;31:19;
32:25;33:2,3,24;36:8,
15,20;37:5,11;38:12,
19;39:1;44:7;53:3;
54:22;55:12;63:19
**IRS- (1)**
38:5
**IRS/government (1)**
34:4
**issue (24)**
8:22;10:5,6;11:4;
13:21;14:1;19:22;
20:24;29:16;30:12;
32:18;36:15,20,24;
37:16;38:19;39:18,
21;49:14;51:20,23;
54:7;55:2,11
**issued (2)**
29:11;48:10
**Issues (15)**
4:22;5:5;9:1;14:3;
29:6;32:2,12,20;
33:19;35:7;38:8;39:1;
44:18;45:2;50:21
**item (1)**
42:14
**iterative (1)**
38:20

## J

**Jared (1)**
59:10
**JD (1)**
31:2
**Jeff (1)**
30:25
**JONES (2)**
3:24;8:2
**JPEG (2)**
17:25;25:3
**JUDGE (12)**
3:25;8:2;10:1;
20:11;33:15;35:22;
43:12;53:17;55:20;
57:12;58:19;62:21
**judgment (6)**
9:2;45:4;51:2,7,12,
18
**judicial (3)**
24:17;28:19;32:1
**July (3)**
45:14,14;47:12
**jump (3)**
18:11,12;26:21
**June (1)**
64:7

## K

**keep (5)**
37:9;49:17;53:16;
61:12;65:15
**kind (5)**
30:12;39:8;41:24;
49:19;53:21
**Kossoff (152)**
4:9,10,16,23;5:6;
7:3;8:4,16,18,25;
9:15;10:18;11:4,10;
14:20;17:5,7,16,18;
18:10,11,23;19:1;
20:8,13,14,16,19;
23:5;24:1,15,17,21,
22;25:6,9,13,20;
26:15,21;27:8,13,22;
28:4,7,17;29:14,19;
31:9,11,11,13,15,16,
18,22;32:3,4,16,18;
33:17;34:13,23,25;
35:3,24;41:2,5,9;42:4,
6,7;43:18,19,22,24;
44:3,12;45:2,13,25;
46:4,10,17,20,22;
47:2,8,21,24;48:19;
49:1,21;50:2,2,4,7,13,
14,23;51:1,4;52:12,
16,18,25;53:1,5,7,12,
14,20,24;54:1,3,7,24;
55:1,2,6,7,8,11,16,21;
56:6,9,10,12,14,18;
57:9,15,17,18,24;
58:2,6,11,15,16,22;
59:1,3,5,16,16,20,20;
60:6;61:1,7
**Kossoff's (6)**
10:7;14:14;27:18;
29:4;41:11;45:11

## L

**laboring (1)**
44:24
**language (1)**
21:19
**last (6)**
27:7,9;54:1;56:12,
23;62:3
**later (7)**
38:25;40:1;47:6;
51:15;55:9;56:5;
57:11
**law (2)**
21:13;38:25
**Lawrence (1)**
31:2
**Le (20)**
5:4;9:7;10:8,12;
36:6;44:5,14;46:5;
47:10,22;48:1,3,11,

12,21,24;49:23;62:4,
25;65:18
**lead (3)**
9:21;29:12;32:8
**least (6)**
17:24;23:20;25:15;
35:9;40:5;53:10
**leave (4)**
24:9;49:12;51:17;
54:3
**leaves (1)**
56:18
**LEE (1)**
7:18
**left (2)**
47:16;59:12
**legal (3)**
27:13;41:18,22
**legion (1)**
26:7
**legitimacy (1)**
16:4
**less (2)**
22:6;61:3
**Letter (10)**
4:22;5:5;44:13,17;
46:14;51:1;63:15;
64:10,11,19
**levels (1)**
23:1
**Levy (1)**
39:18
**liability (1)**
11:1
**lien (6)**
20:4;21:6,11,19;
26:9,11
**life (1)**
53:18
**light (3)**
19:10;44:7;54:22
**likely (3)**
38:12;52:9;61:17
**limited (4)**
14:5;43:20;47:25;
61:2
**line (3)**
40:13;49:16;51:16
**linear (1)**
53:9
**litigating (1)**
31:4
**litigation (2)**
33:23;49:17
**litigatory (2)**
20:23;22:9
**little (11)**
8:10;9:16,18;14:16;
38:14,22;39:7;40:11;
48:13;64:22;65:2
**LLC (7)**
3:7;4:21;5:4,21;
7:12,13;63:9

**LLP (1)**
7:11
**local (1)**
51:6
**location (1)**
64:15
**logistically (1)**
18:21
**long (2)**
14:13;45:16
**longer (1)**
21:6;38:22;54:20
**look (12)**
10:22;11:3,4,5,10;
18:25;28:2,8;35:25;
47:1;50:14;65:6
**lookback (1)**
19:16
**looking (7)**
18:4;27:10;43:2;
47:4,9;48:5;58:17
**lose (1)**
53:5
**loss (1)**
32:16
**lot (2)**
19:22;24:3
**loud (1)**
38:8
**luck (1)**
18:3

**M**

**mail (1)**
53:8
**mailed (6)**
18:16,23;19:2;
27:19,21;53:11
**mailing (2)**
53:13,16
**main (5)**
8:4;11:23;12:14;
20:19;28:9
**makes (8)**
10:13;48:20;51:18;
52:20;53:18;54:21;
55:19;62:19
**making (5)**
12:13;52:13;54:11;
55:14;56:8
**Management (13)**
4:5;8:21,25;9:4,8;
26:24;27:4;28:2,9;
31:23;32:7;36:7;44:1
**manner (1)**
29:1
**many (4)**
17:20;23:22;32:11;
36:2
**marching (1)**
44:1
**matches (1)**

9:22
**materials (1)**
53:8
**matter (15)**
11:2;38:25;46:4,8;
48:1,1,3,6;49:23;
59:12;62:3;63:10,23;
64:4,6
**matters (9)**
18:15;25:8;28:21;
29:5;32:9;43:24;
58:23;59:7;60:8
**may (20)**
8:21;10:8,14;16:16,
18;17:5;24:1;28:16;
29:8;35:7;39:2;47:5;
49:13;50:20,22;
57:17;62:13,15,22;
65:18
**maybe (4)**
9:17;17:13;37:15;
58:13
**mean (4)**
19:9;23:20;37:14;
65:1
**meaning (1)**
11:5
**means (2)**
10:20;51:12
**mechanism (3)**
13:5,7,15
**meet (2)**
22:23;24:18
**meeting (2)**
17:23;45:19
**members (2)**
59:19,20
**memorialize (2)**
35:21;56:7
**mentioned (1)**
60:16
**merits-based (1)**
28:20
**messaged (1)**
18:22
**messes (1)**
61:14
**method (3)**
19:23;23:16,23
**MI (1)**
7:16
**mid-November (2)**
9:17;40:10
**might (9)**
31:5;33:23;36:19;
37:2,18;44:4;51:20;
52:7;53:5
**mind (5)**
8:10,14;9:20;22:24;
48:14
**minimis (2)**
16:14,16
**Minta (3)**

38:2,17;44:10
**minute (1)**
44:20
**misimpression (1)**
38:16
**miss (2)**
55:3,21
**misspoke (1)**
43:8
**mistake (1)**
35:23
**mistaken (3)**
42:12;45:14;47:2
**Mitchell (3)**
4:10,23;5:6
**modify (1)**
47:16
**moment (1)**
12:13
**month (2)**
27:11;44:5
**monthly (1)**
25:8
**months (1)**
9:10
**month's (1)**
27:9
**more (7)**
14:17;21:5;22:6;
34:20;38:15;40:9;
60:10
**Moreover (1)**
21:14
**morning (10)**
8:2;10:1;11:18;
12:21;30:15,20;36:5;
38:2;44:10;63:6
**most (3)**
28:20;32:14;64:6
**Motion (86)**
4:10;8:16;9:2;10:6;
11:21;12:13,15,16,24;
14:21,22;15:2,10,11,
17,21;16:1,6,16,18;
19:12,15,24;22:21;
23:7,10,18,19;25:13,
14;26:16;27:1,2,3,15;
28:13;29:4;31:9,16,
17,22;32:24;33:5,10;
34:3,7;35:2,4,10;36:8,
11,16,19;37:2,7,12,
15,17,19,25;38:7,11,
23;39:1;41:22;42:20;
51:7,18,18,25;52:1,2,
7;53:2;54:4,8,10,11,
15,16,17,22;55:13,14,
19;65:19
**motions (9)**
28:12;29:3;31:17;
51:2,9,10,12;52:13;
63:25
**movant (1)**
41:3

**movants (2)**
38:14,21
**move (9)**
15:6;18:12;22:6;
29:6;30:16;36:2;
37:15;58:20;62:8
**movement (1)**
9:19
**moving (4)**
37:17,24;44:20;
64:12
**much (7)**
24:11;28:16;40:24;
48:5;57:13;58:22;
65:20
**multiple (2)**
28:10;32:13
**must (2)**
20:25;23:2
**myself (1)**
38:23

**N**

**nailing (2)**
24:13;32:12
**name (1)**
29:12
**named (1)**
63:8
**names (1)**
31:3
**National (2)**
42:16;44:14
**nature (1)**
57:22
**near (1)**
27:16
**necessarily (1)**
16:2
**necessary (2)**
25:18;35:15
**need (17)**
8:11,16;9:3,5;31:3;
33:25;34:9,10;38:13,
25;40:5,6;47:7;48:2,
16;52:4;60:24
**needed (3)**
45:22;52:18;61:13
**needs (2)**
27:8;28:19
**negotiate (1)**
12:23
**negotiating (2)**
59:14,15
**negotiation (1)**
59:18
**negotiations (1)**
13:25
**Neil (1)**
10:1
**Neither (2)**
64:10,19

**nervous (1)**
55:20
**Nester (19)**
10:3;27:10;38:1,2,
2,16,17,17;39:13,16,
22,23;40:17;44:10,10,
17,23;59:8;65:21
**nevertheless (1)**
45:14
**NEW (6)**
3:7,19,19;4:21;
19:6;42:21
**next (12)**
9:14;15:1,2;19:19;
34:7,13;40:18;42:20;
43:3;63:14,17;64:4
**ninety-day (2)**
63:23;64:5
**nobody's (1)**
30:2
**nor (1)**
64:11
**normally (1)**
17:24
**North (1)**
5:22
**note (1)**
45:9
**notice (15)**
12:4;13:6;15:9;
17:23;18:4;21:6;26:9,
11;27:8;35:23;40:18,
21;42:5;60:12,12
**notion (1)**
37:2
**November (18)**
9:15;25:10,11;
34:14,17,19;35:5,6;
39:12;43:3,7,8,10;
54:18,19;55:14;56:8;
60:9
**novo (1)**
22:13
**number (14)**
8:4,15;10:21;11:9;
13:24;19:17;20:17;
23:1;29:10;33:19;
42:15;59:19;60:5;
62:4
**numeral (1)**
62:9
**nunc (1)**
61:15
**nuts (1)**
30:11
**NY (1)**
7:6

**O**

**object (5)**
12:5;49:4;50:5,9;
57:22

**objection (2)**
24:23;50:19
**objections (1)**
49:11
**objective (1)**
24:18
**obligation (1)**
16:7
**obligations (1)**
31:25
**obliged (1)**
62:19
**observation (1)**
23:8
**observations (1)**
31:7
**observed (1)**
13:23
**obtain (2)**
11:8;28:20
**obviously (2)**
17:10;39:25
**occur (3)**
9:14;31:6;33:9
**occurred (3)**
33:12;39:4;45:13
**October (13)**
3:21;25:10;27:21;
45:3,16;46:2,14,15;
47:6,10,13,15;56:4
**off (10)**
9:21;20:5;27:20;
29:3;32:22;39:3;
48:16;50:3,15;59:4
**office (7)**
12:8,23;30:13,14,
18;63:13;64:20
**offline (3)**
40:3;57:15;58:10
**Old (1)**
7:4
**omni (2)**
15:2;27:11
**omnibus (2)**
20:7;42:20
**once (5)**
26:9;33:11;40:20;
51:25;52:22
**One (18)**
3:18;9:14;13:19;
14:4;16:10;17:6;
18:13;20:8,13,19;
25:5,6;26:1;28:4;
30:7;53:10;54:1;55:8
**one-defendant (1)**
64:24
**ones (1)**
20:19
**only (6)**
18:2;38:4,19;42:24;
47:25;60:19
**open (3)**
14:13;37:12;41:25

**opening (1)**
49:15
**operations@escribersnet (1)**
5:25
**opportunity (4)**
13:11,16;20:3;
26:24
**opposed (2)**
48:1;51:19
**option (1)**
9:14
**oral (4)**
9:9,12;10:12;36:9
**orally (2)**
55:5;56:2
**order (30)**
8:9;18:19;23:21;
33:23;35:16,17,19;
41:6,7;45:6,7,8;
46:23;47:4,10,12,15;
48:4,10,18;54:12;
55:2,16,25;56:8,19,
21,25;57:4,8
**ordered (3)**
26:18;56:2,6
**ordering (1)**
35:16
**orderly (3)**
23:16;32:9,14
**Orders (6)**
4:23;5:6;18:14;
60:22;61:12,13
**ordinarily (3)**
18:14;24:10;51:12
**originally (1)**
23:20
**otherwise (6)**
14:25;23:18;28:25;
31:6;40:2;52:9
**out (27)**
15:4;16:23;17:15;
18:16;19:6;25:23;
26:25;27:7,23;31:5;
33:23;36:19,20;38:5,
8;40:3,7;43:23;46:5;
47:24;48:16,22;
51:14;53:16;59:1;
61:16,25
**outcome (1)**
28:21;38:15;52:6
**over (3)**
22:9;45:7;62:1
**overarching (2)**
10:6;36:1
**overdue (1)**
9:6
**overview (3)**
8:12;9:22,22
**owed (1)**
25:15
**own (2)**
17:8;37:10

**P**

**page (1)**
27:10
**pages (1)**
57:21
**paid (2)**
21:10,18
**Pamela (1)**
59:16
**papers (4)**
30:13;37:1;38:11,
19
**parallel (1)**
49:24
**part (6)**
8:15;19:12;23:23;
42:19;56:2;58:16
**participant (1)**
27:9
**participants (1)**
8:8
**participate (3)**
12:6;13:7;42:7
**participating (1)**
39:19
**participation (1)**
59:23
**particular (1)**
17:21
**particularities (1)**
27:14
**Particularly (3)**
11:3;35:3;64:1
**parties (8)**
9:6;13:7,16,25;
14:21;28:19;33:1;
48:24
**parties' (1)**
31:25
**partly (2)**
34:3;49:14
**party (7)**
20:1;24:1;33:10;
41:2;47:5;51:3;58:24
**pass (2)**
42:14;43:15
**patched (2)**
41:13;42:7
**pause (2)**
29:13;38:6
**pausing (1)**
33:22
**pay (1)**
60:24
**PC (1)**
7:2
**pending (1)**
37:17
**penny (2)**
61:2,3
**people (5)**

8:21;31:4;41:25;
48:8;51:8
**Perevoski (10)**
4:4;8:15;19:17;
29:9,11;31:18;54:7;
57:10;59:12;60:4
**perfectly (2)**
55:6,13
**perhaps (2)**
35:16;38:20
**period (3)**
10:23;12:2;21:11
**periods (2)**
19:16;20:20
**permissible (1)**
24:13
**permission (2)**
43:15;51:4
**Permissive (3)**
4:12;54:7,15
**permitted (2)**
24:7;54:16
**person (5)**
16:21;41:12;42:1,1,
8
**personally (1)**
39:17
**persuade (1)**
51:8
**persuades (1)**
28:25
**petition (1)**
26:12
**Phoenix (1)**
5:23
**phone (4)**
18:2,22;43:20;53:8
**phrase (2)**
48:13,14
**Phyllis (5)**
7:3;29:19;31:18;
59:15;61:7
**pick (1)**
40:6
**piece (1)**
39:1
**piecemeal (1)**
51:11
**pieces (1)**
16:10
**Pierce (1)**
7:14
**Plaintiff (1)**
3:5
**play (1)**
42:22
**pleading (1)**
35:23
**pleadings (3)**
11:11;23:11;24:12
**please (5)**
12:22;40:21;53:14;
60:9,11

**pleased (1)**
22:23
**PLLC (3)**
8:4;25:9;34:13
**point (11)**
17:21;18:5;21:22;
24:24;26:22;30:17;
40:12;44:21;45:12;
51:14;54:9
**pointless (1)**
51:9
**points (4)**
18:12;26:22,23;
44:18
**pool (1)**
61:2
**portion (1)**
36:21
**portions (1)**
10:8
**position (2)**
16:5;23:5,5
**positive (3)**
13:22;14:17;21:18
**possibility (2)**
9:16;23:11
**possible (4)**
8:22;24:19;28:21;
51:21
**post (1)**
64:20
**postured (1)**
29:5
**potential (6)**
23:9;28:12;36:9;
38:5;59:21;64:1
**potentially (5)**
10:20;36:18,20;
38:14;55:23
**practical (1)**
49:20
**practice (2)**
33:10;52:3
**pre- (1)**
51:25
**precluding (1)**
52:2
**predicate (5)**
21:4;22:3,18;23:2;
25:1
**predicated (1)**
23:2
**prefer (4)**
37:15;38:22;41:12,
14
**preference (7)**
37:10,13;39:10;
49:6;51:11;63:23;
64:6
**preferences (1)**
40:14
**prejudice (4)**
23:8;28:15,22;

49:13
**prejudicial (2)**
49:2;55:23
**prejudicing (1)**
10:17
**premised (1)**
19:17
**pre-motion (2)**
51:6;52:5
**prepared (2)**
8:6;19:7
**preparing (1)**
30:13
**present (2)**
32:11;41:9
**presented (1)**
28:11
**preserved (2)**
33:20;57:23
**preserves (1)**
24:5
**preserving (1)**
47:12
**presumably (1)**
33:8
**Pre-Trial (6)**
4:17;5:11,16;60:22;
61:12;62:9
**prevail (1)**
22:7
**prevent (1)**
54:12
**previously (2)**
45:10;47:17
**prior (4)**
21:6;25:25;47:9;
48:9
**prison (1)**
18:20
**pro (1)**
61:15
**probable (1)**
52:6
**probably (5)**
10:12;30:8;40:9;
42:10;61:14
**problem (2)**
28:6;37:24
**Proc (1)**
3:5
**procedural (9)**
13:5,7;18:12;22:24;
26:2,2;35:6,18;48:4
**procedure (2)**
29:20,22
**procedures (1)**
56:1
**proceed (1)**
29:1
**proceeding (15)**
4:2;7,14,19;5:2,8,
13;8:5;10:9;11:25;
17:20;29:3;31:18;

33:23;42:15
**proceedings (15)**
9:3;10:8,11,22;
12:4;13:6;15:3;23:1,
21;28:10;32:11;38:6;
44:13;59:9;65:23
**process (6)**
15:1,25;16:25;40:6;
53:9;59:24
**produce (1)**
18:20
**produced (1)**
34:24
**production (5)**
46:18;47:13;48:23,
25;58:12
**productive (1)**
37:8
**professionals (1)**
15:23
**progress (1)**
39:3
**promptly (2)**
24:18;54:17
**proof (15)**
10:5,14,20;11:7,23;
12:17,25;13:13,15;
21:18;22:20;24:13;
28:14;32:25;33:2
**proofs (1)**
11:3
**proper (1)**
32:1
**proportionality (1)**
50:21
**proposal (4)**
10:11;18:6;28:11;
50:7
**propose (3)**
11:23;20:5;30:10
**proposed (9)**
8:18;10:7;14:5,6;
15:21;19:8,25;45:6;
55:25
**proposes (1)**
29:7
**proposing (6)**
11:19,20;19:21,23;
20:10;25:14
**protect (1)**
56:7
**protected (1)**
30:5
**protecting (1)**
31:25
**provide (2)**
10:15;52:19
**providing (1)**
10:15
**Pryor (1)**
36:6
**purely (1)**
51:20

**purpose (1)**
14:5
**pursuant (1)**
25:24
**pursue (2)**
39:2;53:2
**push (5)**
28:24;29:20;36:9,
13;61:15
**pushing (2)**
29:21;39:3
**put (12)**
12:22;19:4;20:24;
24:22;25:16;29:23;
34:12;40:9;48:7;
55:16;63:16;64:23
**puts (1)**
17:2

**Q**

**quick (2)**
17:7;53:15
**quicker (2)**
9:18;37:18
**quickly (2)**
30:13,16
**quite (1)**
57:19

**R**

**race (1)**
14:15
**raise (2)**
53:6;65:13
**Raised (9)**
4:22;5:5;8:25;
18:13;39:1;44:17,19;
45:3;50:22
**raising (3)**
12:12;54:13;61:11
**rather (2)**
39:2;56:22
**RE (3)**
4:10,22;5:5
**reach (1)**
31:5
**reach-back (1)**
12:1
**reached (1)**
42:18
**reaction (1)**
17:7
**read (3)**
18:7;37:1;38:10
**readdress (1)**
54:10
**reading (2)**
9:8;38:18
**ready (4)**
35:2;40:5;42:11;
57:2

**real (1)**
60:20
**reality (3)**
22:25;39:5;55:12
**realized (1)**
47:25
**really (9)**
18:7;21:23;37:6;
44:1;49:21;54:14;
55:13;60:25;61:3
**reason (2)**
16:22;32:3
**reasonably (1)**
24:18
**reasons (1)**
20:17
**recall (2)**
42:17;44:4
**recast (1)**
22:13
**receive (1)**
48:21
**received (5)**
17:22;25:12;27:24;
53:1;64:10
**recently (4)**
11:18;16:19;29:10;
64:6
**recognize (1)**
23:6
**recognizing (1)**
34:11
**reconcile (1)**
16:16
**record (11)**
11:12;13:12;19:5;
24:23;25:17;27:12;
28:17;29:24;34:16;
35:15;56:1
**records (1)**
11:8
**recurs (1)**
19:22
**reemphasize (1)**
26:18
**refer (3)**
56:23;57:4;61:6
**reference (1)**
8:5
**referring (2)**
44:12;61:7
**regard (2)**
24:6;57:9
**Regarding (5)**
4:23;5:6;13:17;
14:22;33:2
**regardless (1)**
21:3
**reinforce (1)**
53:13
**reiterate (1)**
38:10
**reiterating (1)**

26:17
**related (4)**
32:21;36:9;38:6;
45:3
**relates (2)**
36:15;37:16
**relating (1)**
38:13
**release (1)**
21:19
**relief (2)**
14:22;33:5
**remainder (3)**
35:8;43:11,16
**remaining (2)**
42:22;44:2
**remark (1)**
58:11
**remarks (1)**
19:21
**remind (1)**
41:1
**remotely (1)**
42:7
**reopen (1)**
24:9
**reporters (1)**
44:25
**represent (1)**
60:16
**representative (3)**
30:15,20;59:17
**representing (3)**
29:15,19;59:19
**request (25)**
14:7;28:11;31:23;
44:3;46:6,7,8,14;
48:20;49:3,7,8,10,15,
22,24;50:3,11,19,23;
51:16;52:4,16,24;
57:16
**requested (2)**
46:15;58:2
**requesting (1)**
58:6
**requests (13)**
33:7;45:21,22;
46:16,24;47:6,22,25;
48:3,8,22;49:5;57:23
**require (4)**
49:9;50:24;51:6;
57:17
**required (1)**
24:12
**requirement (1)**
52:1
**resolution (3)**
34:1;37:15,18
**resolutions (1)**
24:19
**resolve (1)**
37:2;59:25;61:3
**resolved (3)**

14:2;42:23;54:22

**resolving (2)**
16:4;29:6
**resources (2)**
14:9;61:5
**respect (6)**
18:6;32:25;46:22;
48:17;54:4;55:3
**respectfully (1)**
14:7
**respective (1)**
40:14
**respond (3)**
17:5;25:17;48:7
**response (3)**
16:10;50:24;64:10
**responses (1)**
35:5
**responsibility (1)**
45:1
**rest (1)**
17:2
**restart (1)**
24:9
**result (2)**
27:23;48:2
**retract (1)**
58:16
**returned (2)**
64:11,19
**Revenue (9)**
10:19;11:15,21,22;
12:1,6,16,25;26:8
**review (1)**
48:22
**Richard (1)**
39:18
**RICHMOND (24)**
36:3,4,5,5,11,12,15,
18,24;37:7,14,21;
39:10,15,17;40:23,24;
41:4,17,21;62:22,22,
25;63:2
**right (54)**
10:4,24,25;14:10;
15:5;17:3,15,16;
22:12;24:21;26:1,1,2;
28:8;30:7;33:17;34:5,
6,14,18,23;35:18;
36:11,17,22;37:20;
39:25;41:2,15,23;
42:10,13;43:21;
44:16;46:13,16,19;
47:1,8,19;49:25;51:1;
52:24;53:18;55:15;
56:11;58:22,25;59:6;
60:3;61:4,8;62:10;
64:15
**rights (9)**
10:17;14:14,20;
29:23;30:2,4;31:25;
50:8;57:22
**risk (1)**

41:15
**Road (1)**
7:4
**robust (1)**
33:1
**Roc (24)**
5:4;9:7;10:8,12;
36:6;44:5,14;45:4,9;
46:5,19;47:10,22,22;
48:1,3,11,12,21,24;
49:23;62:4,25;65:18
**rolling (1)**
35:9
**Roman (1)**
62:9
**Ronald (1)**
63:6
**routinely (1)**
18:21
**rule (2)**
13:12;15:9
**rules (1)**
51:6
**ruling (18)**
10:7,16;13:23;
16:11;17:1;19:10,12;
23:9;29:11;35:15,18;
49:8,19;50:10,15,17;
54:14;56:24
**rulings (1)**
14:8

**S**

**same (11)**
8:22;21:2,13;36:10;
39:2;45:7,8;46:8,14;
49:24;51:1
**satisfied (3)**
11:6,11;15:3
**save (1)**
15:16
**Savoysky-Smith (2)**
5:15;64:5
**saw (1)**
46:24
**saying (9)**
17:18,25;24:3,4;
32:6,19;50:5;52:16;
53:15
**schedule (14)**
8:17,25;9:1,9;
19:20;32:20,21;35:8;
39:20;45:5,13;51:17;
56:3;61:13
**scheduled (1)**
34:13
**schedules (3)**
20:6;31:24;32:7
**Scheduling (7)**
4:23;5:6;26:25;
44:23;45:6;47:9;62:5
**scope (3)**

33:4;49:3;57:22
**SDNY (1)**
30:23
**second (8)**
16:13;17:7;18:19;
20:8;28:4;31:10;
45:11;57:12
**secondary (1)**
44:21
**Section (3)**
25:24;26:7;62:8
**secured (1)**
21:7;26:13
**seek (3)**
14:22;47:22;64:12
**seeking (1)**
8:19
**seeks (1)**
45:13
**seems (5)**
9:13;26:1;37:6;
38:14;44:6
**sees (1)**
49:2
**Segal (3)**
10:2;63:7,7
**seminal (1)**
24:25
**send (4)**
48:25;53:15;58:12;
62:1
**sending (2)**
17:24;53:14
**sense (6)**
10:13;38:6;51:19;
52:20;54:21;62:19
**sensitive (2)**
39:5;53:5
**sent (6)**
27:22;45:5,7;46:4;
48:16,22
**sentence (1)**
32:5
**separate (1)**
54:17
**September (1)**
64:9
**sequencing (4)**
26:25;29:16;32:1;
33:9
**seriously (1)**
45:1
**serve (8)**
26:3,3;45:21;46:3,
16;47:6;50:18;63:14
**served (5)**
17:11;63:11;64:7,9,
19
**Service (7)**
11:15,22,22;12:6,
16,25;65:2
**Service's (1)**
10:19

**serving (1)**
50:18
**set (15)**
8:17;16:6;21:25;
23:10;31:24;32:6;
35:8;42:6;43:10;
47:24;48:25;51:17;
55:10;56:1,3
**setting (1)**
19:20
**settled (1)**
42:24
**settlement (8)**
13:25;15:10;20:1;
32:25;42:18,20;
59:24;60:21
**settlements (1)**
15:7
**several (1)**
60:21
**Shapiro (1)**
5:20
**share (1)**
38:18
**Sharona (1)**
5:20
**sheer (1)**
18:3
**shoes (1)**
21:9
**shooting (1)**
48:14
**short (1)**
14:8
**shot (1)**
20:15
**shown (1)**
22:17
**sic (1)**
26:8
**side (1)**
34:5
**sideline (1)**
14:1
**signed (1)**
42:19
**significant (1)**
36:20
**significantly (1)**
45:15
**signing (1)**
59:4
**similar (4)**
32:11;38:18;46:8;
48:11
**similarly (2)**
8:18;29:5
**simple (4)**
9:4;30:11;37:2;
49:22
**simply (5)**
16:18;27:6,12;40:9;
51:6

**simultaneously (1)**
39:4
**sitting (1)**
14:1
**situation (4)**
19:24;34:11;54:22;
57:18
**six (1)**
53:10
**sixth (1)**
30:3
**sixty (1)**
23:21
**skittish (1)**
63:25
**slight (1)**
27:23
**slipping (1)**
60:23
**slowing (1)**
44:7
**small (1)**
16:20
**smarter (1)**
38:1
**smoke (1)**
17:14
**SOLELY (8)**
3:3;4:3,8,15,20;5:3,
9,14
**somebody (1)**
61:14
**somehow (2)**
17:11;22:22
**someone (3)**
12:22;28:25;30:14
**something's (1)**
53:21
**somewhat (1)**
30:10
**sooner (2)**
9:16;38:25
**sorry (12)**
12:10;15:15;18:11;
28:4;30:17;31:12,21;
34:15;39:14;43:6,9;
58:4
**sort (10)**
9:17;14:14;16:23;
30:8;38:7,8,10,23;
45:11;61:12
**sought (2)**
16:14;33:5
**sounds (4)**
46:1;58:1;64:2,22
**sources (1)**
11:9
**speak (2)**
14:4;44:20
**speaking (1)**
12:11
**specific (11)**
9:24;10:10,24;21:5,

15,19;29:2,3,8;49:8;
57:8
**specifically (5)**
24:8;29:9;35:1;
46:1;53:6
**specified (1)**
56:5
**specify (2)**
42:2,2
**speed (1)**
34:10
**spelled (1)**
19:6
**spent (2)**
9:8;61:2
**spoke (2)**
11:17;30:20
**spoken (1)**
39:25
**springing (1)**
25:9
**squishy (2)**
49:19;50:10
**Stack (1)**
7:13
**staggering (1)**
39:3
**start (5)**
13:19;17:18;23:8;
30:12;40:6
**started (1)**
13:25
**starting (1)**
41:25
**State (4)**
4:11;22:2;42:4;
56:2
**stated (2)**
33:5;50:15
**States (1)**
3:17
**stating (1)**
19:13
**status (13)**
16:5;19:15;23:16,
22;24:14;26:12;28:1,
14;33:2,25;34:12;
37:5;38:12
**stay (6)**
31:9,16,17,22;
58:24;61:15
**step (3)**
11:14;21:8;63:14
**steps (2)**
19:19;40:18
**stick (2)**
36:23;62:18
**still (3)**
11:17;59:11;63:12
**stipulation (4)**
11:21;12:24;15:21;
42:19
**story (2)**

**20:22;21:20**
**straddles (1)**
27:25
**strategically (1)**
16:22
**Street (2)**
5:22;7:14
**strictly (1)**
41:18
**strikes (3)**
23:15,23;37:4
**strong (2)**
28:24;51:11
**studied (1)**
38:11
**subject (3)**
8:24;50:8,19
**submission (1)**
45:5
**submit (3)**
48:8;55:25;61:16
**submitted (1)**
8:6
**subsequent (3)**
15:20;47:16;54:11
**subsequently (1)**
49:11
**substance (4)**
49:5,12,14,18
**substantial (2)**
9:13;37:3
**substantive (7)**
18:5;24:23;29:22;
60:10,20;64:1,2
**substantively (1)**
37:25
**suggest (1)**
55:25
**suggestion (1)**
58:12
**Suite (3)**
5:22;7:5,15
**suited (1)**
32:8
**summary (6)**
9:1;45:4;51:2,7,12,
17
**super (1)**
38:11
**supporting (1)**
15:22
**supposed (1)**
32:20
**sur (2)**
22:12,12
**sure (13)**
14:16,25;18:17;
20:12;29:21;31:19;
33:13;34:8;41:1;
44:22;46:12;47:20;
60:3
**surmount (1)**
22:22

**surreply (2)**
22:12,12
**suspect (2)**
17:13;27:24

**T**

**talk (7)**
8:19;9:13;36:23;
40:2;41:13;63:4;
65:16
**talking (3)**
15:9;43:2;46:13
**tantamount (1)**
22:9
**task (1)**
22:1
**tax (3)**
10:25;21:6;31:1
**team (1)**
39:6
**teeing (1)**
23:9
**teeny (1)**
64:23
**telephonic (1)**
64:17
**telling (2)**
25:3;52:2
**tells (2)**
19:3;34:17
**temporarily (1)**
38:7
**tend (1)**
62:18
**tending (1)**
9:5
**term (1)**
27:16
**terms (1)**
16:4
**testimony (1)**
41:15
**tests (1)**
21:13
**texted (1)**
34:21
**thanks (3)**
58:22;62:12;65:20
**Thanksgiving (2)**
40:11,12
**thinking (3)**
38:4,8;40:3
**third (2)**
57:14;60:17
**THOMPSON (1)**
7:18
**though (1)**
63:18
**thought (3)**
17:9;19:19;38:20
**thoughts (1)**
55:8

**thousands (2)**
57:21,21
**tightly (1)**
38:19
**till (2)**
46:2;52:10
**timeliness (3)**
49:11,17;50:5
**timely (8)**
32:8;35:23;48:20;
49:7,10;50:11,18,23
**times (1)**
33:20
**timing (9)**
9:2;13:20;29:2;
34:8;45:4;49:3,4;
50:20;51:10
**today (14)**
9:21;16:13;19:7;
22:4;27:2,11,20;
28:17;30:21;35:15;
42:12;43:25;53:16;
59:7
**today's (4)**
10:11;18:20;27:6,
24
**together (1)**
15:24
**TOGUT (13)**
3:3;4:2,7,14,19;5:2,
8,13;10:2;60:5;63:4,
7;64:5
**told (2)**
20:3;27:19
**tolling (1)**
59:22
**took (4)**
11:4,5,10,14
**top (1)**
61:15
**totality (1)**
9:20
**touch (2)**
12:22;40:14
**track (1)**
46:12
**tracking (1)**
38:8
**trampling (1)**
22:9
**Transcribed (1)**
5:20
**transcript (6)**
15:23;27:10;35:20;
56:21,24;57:5
**transfer (1)**
26:10
**transferred (1)**
26:12
**transfers (1)**
10:23
**translate (2)**
25:23;39:9

**translates (1)**
40:8
**transmission (1)**
57:24
**transparency (1)**
15:24
**treat (1)**
49:7
**treatment (1)**
17:12
**tried (2)**
30:1;61:5
**triggered (1)**
58:11
**triggering (4)**
23:2;25:24;26:4;
63:19
**Triomphe (20)**
5:4;9:7;10:8,12;
36:6;44:5,14;46:5;
47:11,23;48:1,3,11,
12,21,24;49:23;62:4,
25;65:18
**true (1)**
23:24
**TRUSTEE (65)**
3:4;4:4,9,16,21;5:4,
10,15;8:7,11;9:22;
10:2,21;11:19;17:24;
18:1;19:21,22;21:3,8,
15;22:1,5,20,25;
23:11,15;24:7;27:12;
28:13,13;29:1,7;30:3;
32:22;34:10;35:1,19,
20;36:25;37:24;38:3,
17;39:6;42:5;44:8,8,
11;46:8;48:5,21,25;
49:2,4,9,10,13,18,25;
50:19;53:13;55:25;
59:6;61:24;63:7
**trustees (1)**
11:2
**trustee's (8)**
10:22;11:6,25;
15:22;16:15;25:2;
42:15,20
**try (13)**
10:23;18:5;22:25;
30:21;31:5;49:8;51:5,
8,23;53:7;57:25;
61:12,15
**trying (8)**
23:16;24:18;39:19;
46:12;47:21;56:22;
60:20;61:25
**tunc (1)**
61:15
**turn (6)**
9:24;23:22;29:7;
38:12;42:11;59:6
**turning (1)**
37:4
**twenty-one (2)**

14:21;15:9
**twice (1)**
    63:12
**two (10)**
    16:9;27:18;34:7;
    40:5,7;55:7,8;59:12;
    60:16;63:8
**type (3)**
    9:5;27:1;57:24
**types (1)**
    28:16
**typo (1)**
    43:9

## U

**ugly (1)**
    30:9
**ultimately (1)**
    21:24
**Um-hum (1)**
    13:9
**unavailable (1)**
    39:19
**uncertainty (1)**
    34:4
**uncommon (1)**
    44:24
**undeliverable (2)**
    64:11,19
**under (3)**
    11:12;26:15;44:24
**undistracted (1)**
    9:19
**unfair (2)**
    18:8;38:14
**unfettered (1)**
    16:24
**United (1)**
    3:17
**universal (1)**
    17:14
**unleash (1)**
    33:10
**unless (5)**
    11:13;28:25;41:6;
    42:12;49:10
**unmarry (1)**
    22:5
**unresolved (1)**
    35:7
**unsecured (3)**
    21:7,12;26:13
**unspoken-for-time (1)**
    9:17
**up (14)**
    8:20;23:9,15;24:11;
    26:20;30:3;37:11;
    40:3,20;42:6;48:23;
    51:23;53:23;61:14
**update (5)**
    9:4;10:15,16,18;
    60:10

**updated (1)**
    61:13
**updates (1)**
    9:23
**upon (6)**
    20:22;21:19;22:7,
    16;23:2;46:23
**urge (1)**
    35:1
**use (2)**
    21:3;30:9
**used (3)**
    11:9;25:23;26:5
**uses (2)**
    10:22;11:25
**using (5)**
    11:7;16:13,19;22:3;
    26:17
**Usually (3)**
    18:23,24,24

## V

**vacate (1)**
    24:10
**valid (8)**
    11:7,13,17;20:20;
    21:24;25:22,22;26:4
**validity (6)**
    10:19;16:24;19:15,
    25;20:4;33:3
**Valley (5)**
    42:16,19,24;44:14;
    60:18
**value-enhancing (1)**
    14:2
**variance (2)**
    16:14,20
**variation (1)**
    16:16
**variety (2)**
    9:4;13:18
**various (6)**
    8:3;20:5;23:12;
    24:20;33:11;44:18
**VARNUM (1)**
    7:11
**vehicle (2)**
    12:8;13:4
**verbal (1)**
    43:9
**verbatim (1)**
    45:5
**versus (1)**
    26:13
**via (2)**
    39:20;42:8
**view (2)**
    16:25;24:25
**views (1)**
    62:5
**vis-a-vis (1)**
    60:1

**VNB (13)**
    3:7;4:21;42:15,21;
    45:6;46:8,19,22;47:4;
    48:1,6,9,17
**volume (2)**
    57:23,24
**voluminous (3)**
    57:16;58:3,7

## W

**wait (8)**
    35:3;37:10;38:13,
    15,22;52:10;54:21;
    57:7
**waiting (5)**
    9:11;10:13;14:1;
    37:9;55:9
**waive (1)**
    41:6
**waived (1)**
    30:4
**waiving (2)**
    29:22;30:2
**walk (1)**
    42:11
**walking (1)**
    18:3
**wants (3)**
    16:23;22:5;29:15
**way (24)**
    8:12;10:18;12:3;
    18:16;20:7;24:5;30:3,
    11;31:24;32:2,7,10,
    14;35:11;39:8;40:13;
    41:14;42:9;49:17;
    57:19,25;59:25;
    61:25;64:3
**ways (1)**
    30:1
**Wednesday (1)**
    40:10
**week (1)**
    15:2
**weekend (1)**
    27:25
**weeks (3)**
    34:7;40:5,7
**welcome (2)**
    58:24;62:20
**what's (6)**
    8:10,14;9:20;12:4;
    34:4;37:12
**whenever (1)**
    58:23
**Whereupon (1)**
    65:23
**whole (3)**
    20:16;49:15;58:12
**wholeheartedly (1)**
    20:17
**who's (2)**
    16:21;63:4

**WILLIAM (1)**
    7:18
**wish (1)**
    12:6
**within (2)**
    21:11;34:7
**without (9)**
    22:14;23:7;28:15,
    22;37:3;45:8,9,18;
    49:12
**word (1)**
    30:9
**words (1)**
    24:3
**work (7)**
    16:3;39:6,7;57:17,
    17,25;58:17
**workflows (1)**
    49:6
**writing (2)**
    25:16;52:4
**written (9)**
    44:4;46:5,24;47:6,
    17;48:7,8;49:22,25
**wrote (1)**
    25:1

## X

**Xenopoulos (1)**
    59:13

## Y

**year (2)**
    10:24,25
**Yep (1)**
    54:6
**YORK (5)**
    3:7,19,19;4:21;
    42:21

## Z

**Zoom (4)**
    41:11,23;42:2,8

## 0

**01146 (1)**
    60:6
**0estericher (1)**
    30:25
**0-E-S-T-E-R-I-C-H-E-R (1)**
    31:1

## 1

**1 (8)**
    4:5,10,17,22;5:5,11,
    16;42:15
**1,000 (1)**
    8:22

**1:24 (1)**
    65:23
**10 (2)**
    8:3;34:19
**10:00 (1)**
    3:22
**1113 (1)**
    47:5
**1141 (1)**
    60:4,5
**11530 (1)**
    7:6
**133 (3)**
    63:9,11,14
**13th (1)**
    64:9
**15th (2)**
    45:14;47:12
**16th (2)**
    5:22;47:13
**17th (2)**
    27:21;56:4
**19th (1)**
    43:3

## 2

**2015 (3)**
    10:24,25;11:2
**2023 (1)**
    3:21
**20th (2)**
    27:22;46:15
**21-10699 (1)**
    8:5
**22-01113 (3)**
    9:3;42:16;44:14
**22-01113-dsj (2)**
    3:6;4:19
**22-01141 (4)**
    8:15;19:18;29:10,
    11
**22-01141-dsj (1)**
    4:2
**22-01146-dsj (2)**
    4:7,14
**22-01158 (3)**
    9:3;44:17;47:11
**23 (1)**
    26:8
**23-01058-dsj (1)**
    5:2
**23-01078 (1)**
    63:5
**23-01078-dsj (1)**
    5:8
**23-01085-dsj (1)**
    5:13
**25 (1)**
    3:21
**25th (1)**
    27:25
**28th (1)**

64:7
**29 (6)**
9:15;25:11;34:14,
17,19;60:9
**29th (15)**
10:13;35:3,5,6;
39:11,21,23;40:2,10;
43:5,7,8,10;63:17;
65:17

## 3

**3 (1)**
60:5
**3/28/16 (1)**
21:17
**30 (1)**
47:6
**300 (1)**
7:15
**302263-0885 (1)**
5:24
**30th (2)**
46:2,15
**31st (1)**
46:25

## 4

**4 (1)**
62:4
**480 (1)**
7:14
**48009 (1)**
7:16

## 5

**509 (1)**
7:5
**52 (1)**
27:10
**544b (3)**
21:4;25:24;26:3
**5th (2)**
47:10,15

## 6

**6122 (1)**
26:7
**6321 (1)**
26:7
**666 (1)**
7:4
**6th (1)**
45:3

## 7

**7 (9)**
3:4;4:3,8,15,20;5:3,
9,14;63:7

**7227 (1)**
5:22

## 8

**85020 (1)**
5:23
**8th (4)**
54:18,19;55:14;
56:8

## 9

**9019 (9)**
12:15;15:2,9;16:1,
6,13,19,25;43:2